WILLIAM DE FOREST MANICE et al., Executors of DE FOREST MANICE, deceased, Appellants, *v.* CATHARINE MARIA MANICE et al., Respondents.

WILLIAM DE FOREST MANICE et al., Executors of DE FOREST MANICE, deceased, Appellants, *v.* DE FOREST GRANT et al., Respondents.

WILLIAM B. E. LOCKWOOD, Administrator of MARY C. LOCKWOOD, deceased, Respondent, *v.* WILLIAM DE FOREST MANICE et al., Appellants.

FRANCES J. MANICE SMITH, Respondent, *v.* WILLIAM DE FOREST MANICE et al., Appellant.

Where, by a will, shares or interests in real or personal estate, to be ascertained by a division or sale, are given, the estate or interest of each devisee or legatee in the property to be divided or converted is a vested interest before the conversion or division, and takes effect in actual enjoyment, as soon as the time appointed for the division or sale arrives.

Limitations over, to take effect in case of the death of any such devisee or legatee prior to the division, refer to the time appointed for the division, and not to the period of its completion, unless the language of the will clearly and unequivocally expresses an intention that the vesting of the estates or interests of the donees shall be postponed until such completion.

If such intention is clearly and unequivocally expressed, effect must be given to it. But such intention will not be imputed to the testator, if it can be avoided.

A general devise to executors in trust vests no estate in them, except for such of the declared purposes as require that the title be vested in them.

The testator devised and bequeathed all his residuary real and personal estate to his executors in trust, to receive the income and to apply it according to the directions of the will, during the life of the testator's widow; upon her death, to sell certain lots, and cause the residue of the estate to be appraised by three appraisers, one of whom should be chosen by the surrogate of the city of New York; to divide the whole into twelve equal parts; to convey, transfer and pay over to the testator's son W., in fee simple, to whom he gave, devised and bequeathed the same, or, in case of his death *to his then living lawful issue,* three of said parts;

to convey, etc., to the testator's son E., in fee simple, and he gave, devised and bequeathed the same to him, or, in case of his death *prior to the time of such distribution*, to his then living lawful issue three other of said parts; to retain and hold as trustees under said will, and he gave, devised and bequeathed the same to them accordingly, two other of said parts in trust, to invest, lease, etc., and receive the income, etc., and apply it to the use of his daughter M., during her life, with remainders over after her decease. He created like trusts as to two other shares of two-twelfths each, for the benefit of his two daughters C. and F. respectively.

He directed that the shares of each of the sons and daughters should include certain real estate, specifically described, at its appraised value; that in case of the decease of either of his said sons *prior to such division*, leaving no lawful issue living *at the time of such division*, the surviving son, or in case of his death, his lawful issue then living, should take the share of the deceased son; and that, in case of the death of either of the daughters *previous to the time of distribution*, the trustees should retain her share upon certain trusts for her issue.

*Held,*—that the estate of the trustees under the general residuary devise would terminate upon the death of the widow.

That the trust to receive the rents, etc., would cease with the trust to apply them.

That the trust to sell vested no estate in the trustees.

That the trusts to appraise, divide and convey were unauthorized as trusts, but could be executed as powers.

That upon the death of the widow the devises to the sons and trustees for the daughters respectively, would immediately take effect in actual enjoyment.

That the trusts to sell, appraise and divide did not suspend the power of alienation of the real estate or the absolute ownership of the personal property, but that from the time of the death of the widow and pending the division, the sons, and the trustees for the daughters, would be entitled to the possession and enjoyment, as tenants in common, of the undivided property subject to the power of sale and division.

That the limitations in case of death of sons or daughters, "prior to the time of such distribution," or "prior to such division," or "previous to the time of distribution," referred to the time appointed for the division, viz., the death of the widow.

That the sons, or their issue then living, would take the shares which were given absolutely, and the daughters, or their issue then living, would take the beneficial interest in the shares given in trust.

A remainder in fee in real estate, to take effect after the expiration of two lives in being, at the testator's death, may be created in favor of a person not in being at that time; and in such a case a further contingent remainder in favor of a person not in being at the creation of the estate may be limited, to take effect in the event that the person to whom the remainder is first limited shall die under the age of twenty-one years.

Statement of case.

A trust to accumulate the rents and profits during the minority of the first of such remainder-man in fee, and for his benefit, is valid.

The power of alienation of *real* estate may lawfully be suspended for the term of a minority after the expiration of two lives in being, by means of a contingent remainder, to take effect in the event of the death of the first remainder-man in fee during his minority.

But the absolute ownership of *personal* estate cannot be suspended beyond two lives in being.

An accumulation *for the benefit of an unborn child*, to commence after his birth and to terminate with his minority, is lawful, provided, in case of real estate, that the accumulation also commences within the time permitted for the vesting of future estates ; and in case of personal property, that it commences within the time allowed for the suspension of absolute ownership.

If the estate limited to the infant is contingent, an accumulation of the income during his minority cannot be said to be for his benefit.

But a devise of lands to an infant when he shall become of age, with remainder over, if he die under age, creates a vested estate in the infant, defeasible by condition subsequent, and this is a sufficient title to sustain an accumulation during the minority of such infant, as being for his benfit

The testator created trusts of real and personal property, to receive the income and apply it during the life of his widow, and, upon her death, to divide the property into shares; and as to the share of each daughter, to receive the income, and apply it to her use during her life, and after her death to divide her part into as many shares as there should be children of such daughter living at the time of her death, and to retain one of such shares for each of said children, and accumulate the net income thereof during his or her minority, and, on his or her arriving at age, to pay the same over to him or her, with its accumulations, with contingent limitations over of the shares of any of such children who might die during minority.

*Held,*—that these contingent remainders and the trusts for accumulation, were valid as to the real estate and void as to the personalty.

That the failure, as to the personalty, of these trusts for accumulation during the minority of the testator's grandchildren, and of the contingent limitations over in case of their death in infancy, did not invalidate the other dispositions of the will.

That the effect of declaring. them void would be to vest the personalty absolutely in the children of each daughter on the death of their mother.

That a void trust, which is separable from other valid trusts, may be cut off, where the trust thus defeated is independent of the other dispositions of the will and subordinate to them, and not an essential part of the general scheme.

The testator directed that during the lifetime of his widow, a portion of the income be distributed by the trustees to his widow and five children, and that the rest be accumulated to swell his residuary estate.

*Held*,—that, except as to this accumulation, the trust was valid.

That a trust to apply rents, etc., to the use of more than two beneficiaries is valid, if it is limited in its duration to the life of one of them.

That the direction for accumulation being void, the portion of the income directed to be accumulated became immediately payable to the persons presumptively entitled to the next eventual estates in the corpus or principal.

That, the widow being still living, these were the sons, in their own right, and the daughters, through their trustees, and the issue of one of the daughters who had died.

That such issue were also entitled to the portion of the income payable, under the will, to their mother during the lifetime of the testator's widow.

That they took it as income, not legally disposed of, accruing from the share in which they presumptively had the next eventual estate.

The husband of the deceased daughter, and administrator of her estate, was properly required to give security before receiving the arrears of accumulations and income due to his wife at the time of her decease, he being a resident of Connecticut, and she having been domiciled there at the time of her decease, and the husband being, by the laws of that State, entitled only to a life estate in her personal property.

The testator made a bequest of $5,000, which he directed paid to the treasurer, for the time being, of Yale College, accompanied with a request that the trustees of the college invest it and accumulate the income until the principal and interest should amount to $30,000, and thereafter apply so much of the interest, when required to do so, as would educate continuously one person who should bear the testator's paternal name, and be a lineal descendant of his, in all their courses, collegiate and scientific.

The college being authorized by its charter to take, this bequest was sustained as a valid bequest of $5,000 to the college; and the questions whether the request created a trust, and whether, if it did, such trust was legal, were left to the courts of Connecticut, where the fund was to be administered. (CHURCH, Ch. J., dissented as to the bequest to Yale College.)

(Argued October 24th, 25th and 26th, 1870; decided January 24, 1871.)

APPEALS from the judgment of the General Term of the Supreme Court in the first district, reversing, in part, the judgment of the Special Term.

All the four actions were brought to obtain a construction of the will of the testator.

The Special Term sustained the validity of the will, except as to the direction to accumulate one-half of the income of the property vested in trustees, and also as to the limitations of the estate in the hands of trustees after the death of each of the daughters and the minority of their issues. These provisions were declared void.

The General Term reversed this decision, declaring all the principal dispositions in the sixteenth section of the will void.

De Forest Manice, the testator, died in New York, April 18, 1862. His will and codicil were dated, the former on the 23d of August, 1858, and the latter the 12th of April, 1862.

The mother of the testator, to whom he gives an annuity, survived him, but died in October, 1863. His widow is living.

Mary C. Lockwood, one of the testator's daughters, commenced an action in the Supreme Court against the executors and others, January 20, 1868, asking for a construction of the will, and claiming that the direction for accumulation in the sixteenth clause, and also the legacy to Yale College, were void. She died intestate, March 10, 1869, and her husband, William B. E. Lockwood, took out letters of administration, and revived and amended her complaint. This is the action thirdly entitled. She left children surviving her, De Forest Manice Lockwood, Buckingham Lockwood, and William B. E. Lockwood, Jr., all infants.

Frances I. Manice Smith, another daughter of the testator, commenced in the same court the action fourthly entitled, March 27, 1869, in which she claimed, generally, that the said will and codicil were illegal and void, in whole or in part, and prayed that the court might so declare them.

On the 9th of April, 1869, the acting executors, William De Forest Manice *et al.*, commenced in the same court their action to establish the trusts and dispositions of the will and codicil. The widow, all the heirs and next of kin of the testator, the husbands of his daughters, his grandchildren, and Yale College, were made defendants. On May 19, 1869, they brought in as a defendant De Forest Grant, an after-born

grandchild of the testator, by supplemental complaint.    These are the actions firstly and secondly entitled.

The four actions were heard together at Special Term, May 27, 1869, before INGRAHAM, Justice.

The complaint of the executors correctly sets forth the will and codicil, and also the names of the children of the testator, the marriages of the daughters, and the names of their children, except the said De Forest Grant (born since the complaint).

The complaint is as follows:

## SUPREME COURT.

TRIAL TO BE HAD IN THE CITY AND COUNTY OF NEW YORK.

WILLIAM DE FOREST MANICE and Benjamin C. Wetmore, in their respective individual capacities, and as executors of the last will and testament of De Forest Manice, deceased, plaintiffs,
*against*

CATHERINE MARIA MANICE; Edward Augustus Manice; William B. E. Lockwood, individually, and as administrator of the goods, chattels, and credits of Mary C. Lockwood, deceased; Caroline A. Grant, and Gabriel Grant, her husband; Frances I. Manice Smith, and James Tuttle Smith, her husband; Manice De Forest Lockwood; Buckingham Lockwood; William B. E. Lockwood, Junior; Charles Madison Grant; Benjamin Melancthon Smith; and the president and fellows of Yale College, defendants.

The complaint of the plaintiffs respectfully shows to this court:

1st. That on or about the eighteenth day of April, in the year one thousand eight hundred and sixty-two, De Forest Manice, then an inhabitant of the town of Hempstead, in the county of Queens, and State of New York, died seized and possessed of certain lands, tenements, and hereditaments in the State of New York and elsewhere, and also of certain

personal property, having before his death made his last will and testament, and a codicil thereto, in due form of law, to pass real and personal property, of which the following is a true copy:

I, De Forest Manice, of Hempstead, in the county of Queens, and State of New York, do hereby make, publish, and declare this my last will and testament, in manner and form following, that is to say:

1st. I order and direct that all my just debts, including bonds and mortgages, and my funeral expenses, be paid as soon after my decease as can be conveniently done.

2d. I give and devise unto my beloved wife, Catherine Maria Manice, my house and lot of land, No. 156 Madison avenue, in the city of New York, occupied by me as my city residence; also my lot of land and stable, No. 21 East Thirty-third street, in said city; to have and to hold the same to her for and during her natural life. And I give and bequeath to my said wife all the household furniture of every kind and description, silver plate, pictures, and family stores that shall be in my said dwelling-house at the time of my decease, and such portion of my household furniture, plate, pictures, and family stores that shall be at my country seat, called Oatlands, situate in Hempstead aforesaid, as she shall select; excepting out of the above bequest, however, all sherry and port wine. And I give and bequeath to my said wife, all my horses and carriages, harness and saddles appertaining to my family establishment, not including those belonging to my farming establishment; all which personal property I so give and bequeath to my said wife for and during her natural life, with the right to dispose of any of the said personal property, except the silver plate and pictures.

And upon the death of my said wife, I give and bequeath all my silver plate and plated ware to my three daughters, Mary C. Lockwood, Caroline A. Manice, and Frances I. Manice, to be divided into three parts of as nearly equal value as possible, and then divided amongst them by lot.

And I give and bequeath to my two sons, William De Forest, and Edward A., all my pictures, to be divided between them in like manner by lot.

And all such household furniture as shall remain, I give and bequeath to all my children, to be divided among them, as aforesaid by lot.

3d. I give and devise unto my mother, Eunice Manice, my house and lot of land situate on the Main street, in the town of Stratford, in the State of Connecticut, now occupied by her, for and during her natural life. And subject to this life estate, I give and devise said premises unto my two sons, William De Forest Manice, and Edward Augustus Manice, their heirs and assigns, forever.

4th. I give and bequeath to my said wife, and to each of my daughters, $100 worth, each, of the books in my library, at cost, to be selected by them, my wife having the first selection, and my daughters according to the priority of their respective ages.

5th. I give and bequeath to my sons, William De Forest Manice, and Edward A. Manice, all the rest and remainder of the books in my library, and all my port and sherry wine, to be equally divided between them.

6th. I give and devise unto my two sons, William De Forest Manice, and Edward Augustus Manice, the eight lots of land situate in the city of New York, bounded by Sixth avenue, Broadway, Thirty-fifth and Thirty-sixth streets; also the lot of land on the north-west corner of Thirty-ninth street and Sixth avenue; also the four lots adjoining on Thirty-ninth street; also the two lots at the south-east corner of Fortieth street and Broadway; also the two lots adjoining on Fortieth street; all in the said city of New York; to have and to hold the same, one equal undivided half part thereof to each of them, for and during their respective natural lives. And in case either shall die, leaving no lawful issue him surviving, and leaving the other him surviving, the survivor shall have and hold the share of the one so dying, during his life.

And upon the death of either leaving lawful issue him surviving, such issue shall take, in fee simple, the share of said lots in which the one so dying is hereby entitled to an estate for life. And in case that but one of my sons shall die leaving lawful issue him surviving, then, upon the death of the last survivor of my said two sons, such issue shall have and hold said above described lots in fee simple. And in case of the death of both of my said sons, leaving no lawful issue them surviving, then upon the death of the last survivor, said lots shall vest in my heirs-at-law, in the same manner as real estate of which I died intestate.

And I hereby authorize and empower my said sons, and the survivor of them, to make lease and leases of said premises so devised to them for life, as aforesaid, or any part thereof, for any term of years not exceeding twenty-one years, at such annual rent as they shall see fit; and to insert in such leases covenants of renewal for any further term not exceeding twenty-one years, at a rent to be ascertained and fixed by appraisement and award in the usual way, upon condition that the lessee or lessees shall, within the first five years of said first term, erect and build upon each of the lots which shall be leased to him or them, a building of brick or stone, covering the whole front of said lot, and at least two stories in height, and that the same, or a similar building or buildings, shall be standing on said lot or lots at the time of the expiration of the first term.

7th. I give and bequeath to my son, William DeForest Manice, my watch and appurtenances.

8th. I give and bequeath to my son, Edward Augustus Manice, my gold-headed cane, and all other personal jewelry.

9th. I give and bequeath to Richard Parnell, if he shall be in my employ at the time of my decease, and shall have been continuously so from the date hereof, $300.

10th. I give and bequeath to Henry H. Dean, if he shall be in my employ at the time of my decease, and shall have been continuously so from the date hereof, $300.

11th. I give and bequeath to Nancy Dunn $100.

12th. I give and bequeath to each and every person, except those above named, who shall be in my employ as house ser-vants at the time of my decease, and shall have been so for one year continuously prior to my decease, provided my wife thinks them worthy, $100.

And I direct the legacies mentioned in this, and in the ninth, tenth and eleventh clauses of this, my will, to be paid within three months after my decease.

13th. I give and bequeath to Susan T. Walker, daughter of Mary Ann Walker, of Stratford, Connecticut, $3,000.

14th. I give and bequeath to Margaret Olmstead, long a member of my family, $3,000.

15th. I give and bequeath to my cousins, Eliza De Forest, Sarah De Forest and Mary Cannon, all of Bridgeport, Con-necticut, $1,000 each; and I order and direct that the legacies given in this and in the thirteenth and fourteenth clauses of this my will, be paid pro rata, as fast as the net income of my residuary estate will allow, after paying the $16,200 per annum, as hereinafter directed.

16th. All the rest, residue and remainder of my estate, real and personal, of every nature, kind and description, I give, devise and bequeath unto my executors, hereinafter named, and the survivors and survivor of them, and such of them as shall act for the time being, in trust, for the uses and purposes following, that is to say:

To invest and keep invested the personal property, or the proceeds thereof, in such securities as I shall leave the same invested, or upon bond and mortgage on productive real estate in the city of New York, or in stock of the State or city of New York; and in case of the sale of any real estate, as here-inafter provided, to invest the proceeds thereof in the same manner; to let or lease the said real estate, or any part thereof, during the lifetime of my said wife, for any term or terms not exceeding five years; to sell and dispose of any or all of my real estate not herein specifically devised, at such time or times as they shall deem beneficial and advantageous to my estate; and to collect and receive the rents, issues,

income, dividends and interest of said residuary real and personal estate, and to use and apply the same during the lifetime of my said wife, as follows :

To pay, deduct and retain so much thereof as shall be required to pay all taxes, assessments and Croton water rents that shall from time to time be imposed or assessed upon my real or personal estate, including such as shall be imposed or assessed upon the premises hereinbefore devised to my wife for life ; to pay thereout all amounts necessary for premiums of insurance, and keeping my improved property in ordinary repair, and to pay thereout all other necessary expenses in the management of my estate, and to apply the net residue of the income of my said residuary real and personal estate as follows :

To pay my wife, Catharine Maria Manice, $8,000 per annum, in quarter-yearly payments, commencing from the day of my death, during her natural life.

To pay to my mother, Eunice Manice, $700 per annum, in quarter-yearly payments, from the day of my death ; and I order and direct my said mother to pay $100 of said annuity, annually, to her sister, Sarah Marks. ·

To pay to each of my children $1,500 per annum, in quarter-yearly payments, during the lifetime of my said wife.

If, by any disaster, the said net annual income of my residuary estate shall fall below the amount of $16,200, the aggregate sum above devised annually, then such deficiency shall be taken off from the annual allowance to my children, pro rata, until their respective allowances shall be reduced to $1,000 per annum ; and any further deduction shall be taken from the allowance to my said wife.

In case the said annual income shall exceed the said sum of $16,200, then out of such surplus are to be paid pro rata, as such surplus will enable my executors to pay the same, the legacies given in the thirteenth, fourteenth and fifteenth clauses of this my will.

And in case there shall still remain a surplus of said income, the same is to be divided into two parts, one of said parts to be

invested, and to accumulate during the lifetime of my said wife; and the other part to divide into eighteen parts, and to pay six of said eighteen parts to my said wife, three of said eighteen parts to each of my said sons, and two of said eighteen parts to each of my said daughters.

And upon the further trust, upon the death of my said wife, in case the legacies herein above given in the thirteenth, fourteenth and fifteenth clauses of this my will shall not have been paid in full, to pay what shall remain unpaid thereof out of my estate; and also to pay thereout the sum of $5,000 over to the treasurer, for the time being, of Yale College, in New Haven; which sum I request the trustees of said college to invest in city or State of New York securities, or upon bond and mortgage on productive real estate in the city of New York, and accumulate the interest until the principal and interest shall amount to the sum of $30,000, and thereafter use and apply so much of the interest of said fund, when required so to do, as will educate continuously one person, who shall bear my paternal name and be a lineal descendant of mine, in all their courses collegiate and scientific.

And upon the further trust, upon the death of my said wife, to cause to be appraised by three competent persons, one to be chosen by my executors, one by the surrogate for the county of New York, and the third by the two so chosen, all my residuary personal estate, and the securities in which the same shall be invested, and also all my residuary real estate (excepting that herein before specifically devised to my sons, and excepting also the house and lot of land No. 156 Madison avenue, and the stable and lot of land No. 21 East Thirty-third street, in the city of New York); and to sell and dispose of at private or public sale, as they shall see fit, the said house and lot of land No. 156 Madison avenue, and said stable and lot of land No. 21 East Thirty-third street, and to give good and sufficient deeds of conveyance in fee simple therefor to the purchasers thereof; and the aggregate amount of such appraisals of such personal and real estate, and the proceeds of the sales of such real estate, and all other

assets then belonging to my estate, to divide into twelve equal parts; and, in case it shall become necessary for such division, to convert into cash any such personal estate or securities as they may see fit, and the proceeds of such sales to stand in the place of the appraised value of such securities in making up the amount of the personal estate.

And upon the further trust, to convey, transfer and pay over to my son, William De Forest Manice, in fee simple, to whom I give, devise and bequeath the same, or in case of his death, to his then living lawful issue, three of said equal twelfth parts; which said three parts, so to be conveyed to him, or to his issue, shall include the following real estate, at the value at which the same shall be appraised, as aforesaid, that is to say: The store and lot of land No. 46 Pine street, being the north-westerly corner of Pine and William streets, in the city of New York; also, one undivided half part of each of the two pieces of land or farms situate at Hempstead aforesaid, on the south side of the Hempstead and Jamaica turnpike, purchased by me from George Lowden, Abraham Remsen and John Harold; the same to be free from encumbrance; and the residue to be made up out of the personal estate at the appraised valuation aforesaid.

And upon the further trust, to convey, transfer and pay over to my son, Edward Augustus Manice, in fee simple, and I give, devise and bequeath the same to him, or in case of his death prior to the time of such distribution, to his then living lawful issue, three of said equal twelfth parts; which said three parts so to be conveyed to him, or to his issue, as aforesaid, shall include the following real estate at the value at which the same shall be appraised, as aforesaid, that is to say: The stores and lots of land Nos. 42 and 44 Nassau street, in the city of New York, at the north-easterly corner of Liberty and Nassau streets, the same to be free from encumbrance; also, one undivided half part of each of the two pieces of land or farms situate at Hempstead aforesaid, on the south side of the Hempstead and Jamaica turnpike, purchased by me from George Lowden, Abraham Remsen and John Harold,

the same to be free from encumbrance; and the residue to be made up out of the personal estate at the appraised valuation aforesaid.

And in case of the decease of either of my said sons prior to such division, leaving no lawful issue living at the time of such division, then my surviving son, or in case of his death his lawful issue then living, shall take, receive and inherit the share of the deceased son.

And upon the further trust, to retain and hold as trustees under this my will, and I give, devise and bequeath the same to them accordingly, two other of said equal twelfth parts; which shall include the following real estate at the value at which the same shall be appraised, as aforesaid, that is to say: The store and lot of land No. 56 Cedar street, and the houses and lots of land Nos. 229 and 231 Second street, in the city of New York; and the residue to be made up out of the personal estate at the appraised value aforesaid; in trust, to invest and keep invested the personal property in the securities in which the same shall be set off to them, or upon bond and mortgage on productive real estate in the city of New York; to let or lease the said real estate aforesaid, and collect and receive the rents, issues and income thereof, and after paying the taxes and assessments that shall or may be imposed upon said real estate, and expenses for repairs, insurance and other incidental expenses, to apply the net income of said real and personal estate so held in trust, half-yearly, or as the same may be received, to the use of my daughter, Mary C. Lockwood, for and during her natural life; and after her death, or after the time of said distribution, in case she shall have previously died, to divide the said two twelfth parts into as many shares as there shall be children of my said daughter living at her decease, and to retain one of said shares for each of said children, and to accumulate the net income thereof during his or her minority; and on his or her arrival at the age of twenty-one years, to pay him or her the same, with its accumulations; provided, however, that in case either of said children shall, during his or her minority, be in need of any

portion of said income for his or her support, my said trustees are authorized to apply the same; and provided that in case of the death of either leaving lawful issue, the said share is to be paid to such issue; and in case of his or her death during minority without leaving lawful issue, then such share is to be paid to the survivors of said children; and in case of default of issue of my said daughter, then to convey, transfer and pay over the said two twelfths to my heirs-at-law, in such shares and proportions as, by the present laws of the State of New York, they would take and inherit real estate of which I died seized and intestate.

And upon the further trust, to retain and hold as trustees under this my will, and I give, devise and bequeath the same to them accordingly, two other of said equal twelfth parts; which shall include the following real estate at the value of which the same shall be appraised, as aforesaid, that is to say : one equal undivided half part of the store and lot of land No. 701 Broadway, in the city of New York; and the residue to be made up out of the personal estate, at the appraised value aforesaid; in trust, to invest and keep invested the personal property in the securities in which the same shall be set off to them, or upon bond and mortgage on productive real estate in the city of New York; to let or lease the said real estate aforesaid, and collect and receive the rents, issues and income thereof, and after paying the taxes and assessments that shall or may be imposed upon said real estate, and expenses for repairs, insurance and other incidental expenses, to apply the net income of said real and personal estate so held in trust, half-yearly, or as the same may be received, to the use of my daughter, Caroline Amelia Manice, for and during her natural life ; and after her death, or after the time of said distribution, in case she shall have previously died, to divide the said two twelfth parts into as many shares as there shall be children of my said daughter living at her decease, and to retain one of said shares for each of said children, and to accumulate the net income thereof during his or her minority, and on his or her arrival at the

age of twenty-one years, to pay to him or her the same, with its accumulations; provided, however, that in case either of said children shall, during his or her minority, be in need of any portion of said income for his or her support, my said trustees are authorized to apply the same; and provided that, in case of the death of either leaving lawful issue, the said share is to be paid to such issue; and in case of his or her death during minority without leaving lawful issue, then such share is to be paid to the survivors of said children; and in case of default of issue of my said daughter, then to convey, transfer, and pay over the said two twelfths to my heirs-at-law, in such shares and proportions as by the present laws of the State of New York they would take and inherit real estate of which I had died seized and intestate.

And upon the further trust, to retain and hold as trustees under this my will, and I give, devise and bequeath the same to them accordingly, two other of said equal twelfth parts, which shall include the following real estate at the value at which the same shall be appraised as aforesaid, that is to say: one equal undivided half part of the store and lot of land No. 701 Broadway, in the city of New York, and the residue to be made up out of the personal estate at the appraised valuation as aforesaid; in trust, to invest and keep invested the personal property in the securities in which the same shall be set off to them, or upon bond and mortgage on productive real estate in the city of New York; to let or lease the said real estate aforesaid, and collect and receive the rents, issues and income thereof, and after paying the taxes and assessments that shall or may be assessed or imposed upon said real estate, and expenses for repairs, insurance and other incidental expenses, to apply the net income of said real and personal estate so held in trust, half-yearly, or as the same may be received, to the use of my daughter, Frances Isabella Manice, for and during her natural life, and after her death, or after the time of said distribution, in case she shall have previously died, to divide the said two twelfth parts into as many shares as there shall be children of my said

daughter living at her decease, and to retain one of said shares for each of said children, and to accumulate the net income thereof during his or her minority, and on his or her arrival at the age of twenty-one years, to pay him or her the same, with its accumulations; provided, however, that in case either of said children shall during his or her minority, be in need of any portion of said income for his or her support, my said trustees are authorized to apply the same; and provided, that in case of the death of either leaving lawful issue, the said share is to be paid to such issue; and in case of his or her death during minority without leaving lawful issue, then such share is to be paid to the survivors of said children; and in case of default of issue of my said daughter, then to convey, transfer, and pay over the said two twelfths to my heirs-at-law, in such shares and proportions as, by the present laws of the State of New York, they would take and inherit real estate of which I died seized and intestate.

Providing, however, that in case either of my said daughters shall die unmarried, and without leaving lawful issue her surviving, she is hereby authorized and empowered to make an instrument of appointment in the nature of a last will and testament, disposing the share of my estate, so as aforesaid to be held in trust for her benefit; and in case of such instrument of appointment, upon her death, the same shall be conveyed and transferred to the persons and parties and in the shares and proportions, which she shall so appoint.

And in case at the time of such division, there shall remain unsold any vacant lots of land, and my said executors shall deem it more beneficial for my children that the same be divided among them rather than sold, then I authorize such remaining vacant lots to be appraised as aforesaid, and to be apportioned among the shares aforesaid in the same manner as their proceeds would have been apportioned by virtue of this my will had the same been sold; such of said vacant lots as shall be allotted to my daughters, to be subject to the trusts herein before named, with power to the trustees to sell the same whenever they shall see fit, and to invest the pro-

ceeds on bond and mortgage on productive real estate in the city of New York.

And I hereby authorize and empower my sons, William De Forest Manice and Edward Augustus Manice, if they shall elect at the time of such division, to take the interest I hold in lands in company with Charles G. Havens, on or near Lake Superior, at the sum of $10,000 less at the rate of five dollars per acre for such part thereof, if any, as I shall have sold during my lifetime ; and, in case they shall elect to take the same, then they shall account to my estate for the amounts which, by virtue hereof, they are to pay for said interest, and that amount shall represent said lands in the division aforesaid; and my said sons shall be entitled to all reservations of mineral rights made on sales that shall have been made by me at any time; and in case my said sons shall elect to take said property, then, upon their compliance with said above mentioned terms, I give and devise the same to them in fee simple.

And all charges on my books of account, other than my expense books, against any of my children, shall be considered as part of my personal estate, and shall be deducted from such child's portion.

17. I further will and order that, in case my mother shall survive my wife, then I charge the annuity hereinbefore given to my said mother upon the shares of my residuary estate given in and by this my will to my said two sons, and I order and direct that they pay the same to her, quarter-yearly, during her natural life.

18. I will, order and declare, that what I have hereinbefore given to and provided for my said wife are so given and provided, and are to be taken and received by her, in lieu and bar of dower and right of dower in my estate.

And I further will, order and declare, that all the legacies and provisions hereinbefore contained, for the benefit of my said daughters, respectively, are to be taken and received by them, whether married or not, the same as if they were single and unmarried, and not to be subject to the control or inter-

ference, or the liabilities, of any husband either of them may at any time have.

And I do declare that, wherever in my said will I have devised or bequeathed to the issue of any child of mine, such issue, if more than one, if standing in different degrees of relationship to such child, are to take by representation.

19. I hereby nominate, constitute and appoint my son, William De Forest Manice, and my son, Edward Augustus Manice, when he shall arrive at lawful age, and my friends, George A. Robbins and Benjamin C. Wetmore, of the city of New York, and Francis S. Lathrop, of Madison, New Jersey, executors and trustees of this my last will and testament; authorizing and empowering them, the survivors and survivor of them, and such of them as act for the time being, to compromise and compound with any or all of my debtors, and to submit to arbitration any and all disputes or controversies which shall or may arise in the settlement of my estate; and I also empower them, in making any sales of real estate authorized by this my will, to make the same at public or private sale, as they may see fit, and to give good and sufficient deeds of conveyance in fee-simple therefor, to the purchaser or purchasers thereof; and I further authorize and empower them, in case of the damage or destruction by fire of any building or buildings on any of my property, either prior to the division or such as they shall hold in trust after such division, to rebuild the same; and in case the amount received upon the policy or policies of insurance shall not be sufficient for that purpose, to use any funds belonging to the estate, if such damage or destruction shall occur prior to such division, or any funds belonging to the particular trust, if the same shall occur after such division; and in case such fund shall not be sufficient, then to execute and deliver to any person or persons, or body corporate, who will loan the same, a mortgage upon the premises upon which the building or buildings so damaged or destroyed was situated, for an amount which shall be sufficient to complete and finish such building or buildings.

Lastly, hereby revoking and making null and void all former wills by me made, I declare this, and this only, to be my last will and testament.

In witness whereof, I have hereunto set my hand and seal, this twenty-third day of August, in the year of our Lord one thousand eight hundred and fifty-eight.

DE FOREST MANICE.  [L. S.]

Signed, sealed, published and declared, by the testator, the said De Forest Manice, as and for his last will and testament, in our presence, who, at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses; the word "before," on the first line of the ninth page, being interlined before the execution hereof; also, the words, " or in securities of the city or State of New York," being stricken out before the execution hereof, on the second and third lines of page sixteen.

RICHD. H. BOWNE, 177 2d Av., N. Y.<br>
E. D. HAMMOND, 80 E. 16th st., N. Y.<br>
JAMES P. HYATT, 15 W. 44th st., N. Y.

I, De Forest Manice, the testator named in the foregoing will, do hereby make this codicil thereto:

First. I give and devise unto my three daughters, Mary C. Lockwood, Caroline A. Manice, and Frances I. Manice, all those pieces or parcels of land belonging to me, situated on the westerly side of Broadway, between Forty-eighth and Forty-ninth streets, and on Forty-eighth street, in the city of New York, being the entire premises conveyed to me by deed from John B. Stratton and Abraham Craig, executors, dated March 22, 1859, and recorded in the office of the register of the city and county of New York, in liber 784 of conveyances, page 152, April 22, 1859; to have and to hold, to each of them, one undivided third part thereof for life; and upon the death of each, I give and devise the one-third part of the one so dying unto her lawful issue then living, each then living child of hers taking one share thereof, and the issue of any deceased

child of hers taking by representation the share their parents would have taken if living.

*Item.* I revoke the devise in the sixth clause of my said will to my two sons, William De Forest and Edward Augustus, of the lot of land in the city of New York, on the easterly side of Broadway, commencing at a point distant southerly from the south-easterly corner of Broadway and Fortieth street, twenty-five feet seven and one-half inches, running thence southerly along said easterly line of Broadway, twenty-five feet seven and one-half inches, thence easterly and parallel with Fortieth street one hundred and nine feet one and one-half inches, thence northerly and parallel with Sixth avenue twenty-five feet, thence westerly and parallel with Fortieth street one hundred and two feet eleven inches, to the place of beginning; and I do hereby devise the said lot of land unto my two sons, William De Forest and Edward Augustus Manice, until my grandson, Manice De Forest Lockwood, shall arrive at the age of twenty-one years, or until his death, if he should sooner die, they paying all taxes and assessments thereon, and paying to the guardian of my said grandson, to be by him invested until he shall arrive at the age of twenty-one years, for his use, yearly and every year, $350; and upon the arrival at the age of twenty-one years of my said grandchild, I give and devise to him the said lot of land, in fee-simple, subject, however, to the right and privilege of my said two sons to remove, within a reasonable time after the expiration of their interest in said lot, all improvements which shall be on said lot at the time their interest ceases. And in case of the death of my said grandson before arriving at the age of twenty-one years, he being without lawful issue, I give and devise said lot of land to my said two sons, William De Forest and Edward Augustus, in fee-simple.

*Item.* Since making my said will, I have expended considerable sums of money, and contemplate expending more, in the improvement of the lots of land which I have devised to my two sons, in the sixth clause of my will.

Now, I do hereby will, order and direct that they, my said two sons, be charged in the settlement of my estate with all amounts charged on my books, with interest thereon, for the improvements aforesaid; and also for all sums which shall hereafter be charged thereon by me for such purposes, with interest; and also that they shall be charged with any outstanding claims against me for improvements thereon; and, further, that they shall be allowed all credits which I shall hereafter make in the said accounts. The said accounts now stand on my books under the heading or title, "building number 667 Sixth avenue, north-west corner of Thirty-ninth street; "buildings corner Fortieth street and Broadway;" "buildings and improvements on the block bounded by Broadway, Thirty-fifth and Thirty-sixth streets and Sixth avenue;" "buildings, Fortieth street." And I further order and direct that my executors shall, at the request of my said sons, lend them, out of the funds which shall be in their hands, to be invested for the purposes of my will and this codicil, money to improve said lots of land to the extent of $75,000, including the balance which shall be then charged in said accounts for improvements, as aforesaid, and also including any unpaid claims, as aforesaid; which sum, so loaned, charged or outstanding, shall be secured to my estate by their bond and mortgage on said lots of land and improvements thereon, with lawful interest, payable half-yearly, the principal to be repaid at such times as they and my other executors shall agree.

*Item.* I hereby authorize and empower my executors and trustees, under my will and this codicil, to make investments in the stocks of any of the States in New England, or of the States of Ohio or Pennsylvania, in addition to those authorized by my will.

*Item.* I hereby increase the bequest, in the ninth clause of my will, to Richard Parnell, to $1,000, upon the conditions in said clause.

*Item.* I hereby revoke the appointment, in my will, of Francis S. Lathrop, as an executor of my will, and, instead,

appoint my wife, Catharine Maria Manice, executrix, with the other executors named in my will.

*Item.* I hereby amend my will, on the fifteenth page, line twenty-one, after the word "any," so as to read, "houses and lots and vacant lots of land, and my said executors shall deem it more beneficial for my children that the same be divided among them, rather than sold; then I authorize such remaining houses and lots and vacant lots," stopping before the word "to," after "lots," on the twenty-fifth line of the same page.

And, lastly, in all things not hereby altered, I confirm and publish my will and testament, and declare this to be a codicil thereunto.

In witness whereof, I have hereunto set my hand and seal this twelfth day of April, in the year one thousand eight hundred and sixty-two.

DE FOREST MANICE. [L. S]

Sealed, signed, published and declared by the testator, the above named De Forest Manice, as and for a codicil to his last will and testament, in our presence, who, at his request, in his presence and in the presence of each other, have hereunto subscribed our names as witnesses.

EDWARD S. GOULD, 18 Clinton place, New York.

T. MATLOCK CHEESMAN, 5 East Twenty-seventh street, New York city.

And that afterward, to wit, on the 10th day of May, 1862, the said last will and testament, and the said codicil thereto, were in due form of law proven as a will of real and personal estate, before the surrogate of the said county of Queens, and by him admitted to proof and probate accordingly.

*Secondly.* That the said De Forest Manice left him surviving his widow, the defendant, Catharine Maria Manice, and his two sons, the plaintiff, William De Forest Manice, and the defendant, Edward Augustus Manice and his three daughters, Mary C. Lockwood, since deceased, and the defendants, Caroline A. Grant and Frances I. Manice Smith, his only heirs-at-law and next of kin; and that the said widow

and children of the said De Forest Manice are all now living, except the said Mary C. Lockwood.

That the said Mary C., in the lifetime of the said De Forest Manice, intermarried with the defendant, William B. E. Lockwood, and has had lawful issue, now living, namely, her sons, the defendants, Manice De Forest Lockwood, Buckingham Lockwood and William B. E. Lockwood, Junior; that she had no other issue, nor are any other issue of said Mary C. now living.

That the said Caroline A., since the death of the said De Forest Manice, intermarried with the defendant, Gabriel Grant, and has had lawful issue, now living, namely, her son, the defendant, Charles Madison Grant, and has had no other issue.

And that the said Frances I., since the death of the said De Forest Manice, intermarried with the defendant, James Tuttle Smith, and has had lawful issue, now living, namely, her son, the defendant, Benjamin Melancthon Smith, and has had no other issue.

That the said children of the said three daughters of the said De Forest Manice, are respectfully infants under the age of fourteen years.

That the two defendants, Manice De Forest Lockwood and Buckingham Lockwood, sons of the said Mary C. Lockwood, were born before the death of the said De Forest Manice; and that the defendant, William B. E. Lockwood, Junior, son of the said Mary C. Lockwood, was born since the death of the said De Forest Manice.

That the defendant, Charles Madison Grant, son of the said Caroline A. Grant, was born since the death of the said De Forest Manice.

And that the defendant, Benjamin Malancthon Smith, son of the said Frances I. Manice Smith, was also born since the death of the said De Forest Manice.

*Thirdly.* That the said daughter of the said De Forest Manice, Mary C. Lockwood, died intestate, since the death of the said De Forest Manice, and on the 10th day of March,

in the year 1869, in the town of Norwalk, in the State of Connecticut, where she then was domiciled; and that letters of administration of the goods, chattels and credits of the said Mary C. Lockwood, deceased, were duly granted by the surrogate of the county of New York, on or about the 30th day of March, in the year 1869, to her said husband, the defendant, William B. E. Lockwood, who has duly qualified as such administrator.

And that the said Mary C. Lockwood left her surviving the defendants, Manice De Forest Lockwood, Buckingham Lockwood, and William B. E. Lockwood, Junior, her only issue, heirs-at-law and next of kin.

*Fourthly.* That Eunice Manice, the mother of the said De Forest Manice, died after his decease, and in the month of October, in the year 1863.

*Fifthly.* That the said plaintiffs, William De Forest Manice and Benjamin C. Wetmore, are two of the executors named in the said last will and testament of the said De Forest Manice, and that they have both qualified as executors of the said last will and testament; and that on the 10th day of May, in the year 1862, letters testamentary thereon were duly issued to them by the said surrogate of Queens county; and that neither the executrix nor any other of the executors named in the said will or in the said codicil has qualified as an executor, or acted or consented to act as an executor of such will, or as a trustee under the same.

*Sixthly.* That the defendant, Catharine Maria Manice, the widow of the said De Forest Manice, has, after notice of the devises to her and of the provisions made for her by the said will, elected to take the lands devised to her and the pecuniary and other provisions made for her by the said will of the said De Forest Manice, in lieu of her dower in the lands of the said De Forest Manice; and that she, the said widow, has not, within one year after the death of her said husband, the said De Forest Manice, nor within one year after notice of the said devises to her and provisions made for her, entered on the lands to be assigned to her for her dower, or commenced

proceedings for the recovery or assignment thereof; although more than that period hath long since elapsed.

*Seventhly.* That the defendants, the president and fellows of Yale College, are a corporation duly incorporated under and by the laws of the State of Connecticut.

*Eighthly.* The plaintiffs further show, that in the execution of the trust devolved upon his executors by the said De Forest Manice in and by his said last will and testament, and the said codicil thereto, various questions and doubts have arisen, which they by this action desire to submit to the judgment of this court, and to obtain the direction of this court concerning the same; among which said questions are the following:

1st. Whether the annuity of $700 given by the sixteenth clause of the said will to the said mother of the said De Forest Manice, for the year in which she died, should be apportioned; and, in that event, what person or persons is or are entitled to the respective portions thereof; and who will be entitled to the said annuity from her death until the death of the said widow of the said De Forest Manice?

2d. Whether the annuity of $1,500 given by the said sixteenth clause of the said will to the said Mary C. Lockwood, the said deceased daughter of the said De Forest Manice, for the year in which she died, should be apportioned; and, in that event, what person or persons is or are entitled to the respective portions thereof; and who will be entitled to said annuity from her death until the death of the said widow of the said De Forest Manice?

3d. Whether the share, being two-eighteenths of the one-half of the surplus of the net annual income directed to be paid, in and by the said sixteenth clause, to the said Mary C. Lockwood, for the year in which she died, should be apportioned; and, in that event, what person or persons is or are entitled to the respective portions thereof; and who will be entitled to the said share of income, from her death until the death of the said widow of the said De Forest Manice?

4th. Whether the devises and bequests in trust, expressed and declared in the said sixteenth clause of the said will, or either of them, or any and what parts or part thereof were, and are, or was, and is, contrary to law and therefore void, or valid and proper to be carried into execution; and *especially* whether the direction in the said sixteenth clause to accumulate, during the life of the said wife of the said De Forest Manice, part of the income of his estate, is valid or void; and, if void, who is or are entitled to said part of said income during the life of the said wife? And whether the direction in the same clause to pay $5,000 to the treasurer of said Yale College is valid or void?

5th. Whether all, or any, and what parts or part of the directions contained in the said sixteenth clause, as to the division and disposition after the death of the said daughters of the said De Forest Manice, respectively, of the two equal twelfth parts therein mentioned as to be retained and held in trust under said will, during the life of each of said daughters, were, or are, or was, or is, contrary to law and void, or valid and proper to be carried into execution?

6th. Whether all, or any, and what part or parts of the directions contained in the said sixteenth clause, concerning the retention of any share or shares of the estate of the said De Forest Manice, for any child or children of the daughters, respectively, of the said De Forest Manice, or for the accumulation thereof, were, or are, or was or is, contrary to law and void, or valid and proper to be carried into execution?

Wherefore, the plaintiffs demand the judgment of this court against the above named defendants; and that this court do determine the said several questions, and such other questions as may be made in the premises by any of the said above named defendants; and settle and declare the true intent, meaning, and effect of the several trusts and dispositions expressed, or attempted to be expressed, in and by the said last will and testament, including said codicil hereinbefore set forth, and whether any, and if any what, provisions in the same contained are void as contrary to law; and that

the trusts and dispositions in the same last will and testament expressed, as this court may settle and determine the same, may be declared valid, and may be established and carried into full execution, by the order and direction of this court in that behalf; and that the plaintiffs may have such other relief, or such further relief, or both, as shall be agreeable to equity.

BENJAMIN F. DUNNING,
*Attorney for Plaintiffs,*
54 William street, New York.

STATE OF NEW YORK, CITY AND COUNTY OF NEW YORK, *ss :*

William De Forest Manice, being duly sworn, says : That he *is* one of the plaintiffs in the above entitled action, and that the foregoing complaint is true of his own knowledge, except as to the matters therein stated on information and belief, and as to those matters, he believes it to be true.

WILLIAM DE FOREST MANICE.

Sworn to before me, this 9th } day of April, 1869.

A. V. W. VAN VECHTEN,
*Notary Public, City and County of New York.*

The son, Edward A. Manice, answered this complaint, agreeing that the sixteenth clause was in all respects valid.

William B. E. Lockwood, as administrator of Mary C. Lockwood, deceased, admits the truth of the allegations of the complaint; alleges the testator died intestate as to personal estate; that the accumulation directed in the sixteenth clause, and the gift to Yale College were void. That the direction to the executors to retain the property during the life of the widow, and to divide the same at her decease into twelve parts, and retain two-twelfths, and accumulate for the life of Mary C. Lockwood, with remainder as provided in that clause, are void.

Caroline Grant, daughter of the testator, and Gabriel Grant, her husband, answered, alleging generally that the will and codicil was in whole or in part void, and the testator died

intestate.   Frances I. Manice Smith, and J. Tuttle Smith, answered to the same effect as the Grants.

The Lockwood children, infants, by Charles F. Sanford, their guardian, answered submitting their rights to the court.

The infant Charles Madison Grant, by his guardian, W. R. Darling, and the infant Benjamin M. Smith, by his guardian, F. N. Dodge, also put in answers submitting their respective rights to the judgment of the court. De Forest Grant, having been made a party by supplemental complaint, also put in a similar answer by his guardian, W. R. Darling.

The lands disposed of by the sixteenth section of the will, were estimated at about $900,000, and other lands worth about $500,000.   The testator's personal estate at his death was estimated about $200,000.

The General Term held in substance, that the limitations after the wife's death were not to vest until after an actual appraisal and division should have been made, and that the time necessarily taken in making such appraisal and division was not measured or limited by the existence of a life or lives in being, at the death of the testator, and such limitations were, therefore, too remote.   It held, therefore, the main provisions of the sixteenth clause void.

All parties appealed to this court.


*Charles O'Conor*, for the executors:

*First.*  The gifts of legal estates to the sons or their issue, in the sixteenth section, and also the direction therein to retain and hold, as trustees, each daughter's share, took effect in actual enjoyment immediately upon the widow's death.

1st. The words of the gifts and directions require this interpretation.  All the special directions conform to it, and several are inconsistent with any other.  (GROVER, J., in *Schettler* v. *Smith*, 41 N. Y., 337; NELSON, Ch. J., *Bulkley* v. *De Peyster*, 26 Wend., 27, 28; *Dubois* v. *Ray*, 35 N. Y., 170; *Birds* v. *Askey*, 24 Beavan, 617; MARSHALL, Ch. J., *Finlay* v. *King*, 3 Peters., 381.)

2d. For the purpose of vesting the interest in such cases, the rule of construction deems that done which is ordered to be done, and this rule can hardly be overcome even by the most clear and explicit and unequivocal expression of an intent to defeat it. (Jarm. on Wills, chap. 20, § 3, p. 539; 2 Am. ed., by Perkins; *Elwin* v. *Elwin,* 8 Ves., 547; *Pearson* v. *Lane,* 17 Ves., 101; *Hutchin* v. *Mannington,* 1 Ves., 366; *Sitwell* v. *Bernard,* 6 Ves., 536; *Gaskell* v. *Harman,* 11 Ves., 489, 497; Roper on Legacies, 561, marg. p.; *Wood* v. *Penoyre,* 13 Ves., 325; *In re Arrowsmith's Trusts,* 2 DeG. F. & J., 474; Sir J. Leach, M. R., in *Law* v. *Thompson,* 4 Russ. 100; Lord Eldon, *Earl of Stair,* v. *Macgill,* 1 Bligh, N. S., 679, 680; *Vigor* v. *Harwood,* 12 Simons, 177; Lord Langdale, M. R., in *Whitinger* v. *Force,* 2 Beavan, 573; *Clason* v. *Clason,* 6 Paige, 541; S. C. on Appeal, 18 Wend., 369 : *Traver* v. *Schell,* 20 N. Y. R., 92; *Martin* v. *Martin,* Law R., 2 Eq., 401.)

3d. An illegal intent is not to be presumed or inferred; and if there be equally strong ground for inferring a lawful intent, that will be preferred. (*Dubois* v. *Ray,* 35 N. Y., 165, 175; 10 Paige, 155; 2 Barb., 244; 29 N. Y., 95; 43 Barb., 647; 33 N. Y., 601; 2 Jarm. on Wills, 2d Am. ed., 743; Pars. on Wills, 32; 4 Ves., 312; 11 Ves., 142, 149; 1 Roper on Legacies, 1462; *Tucker* v. *Tucker,* 1 Seld., 413; *Pennington* v. *Bulkley,* 11 Lond. Jur., 468.)

4th. An act directed by one having authority to require it, is always regarded as done and completed at the instant of time indicated by him for the purpose, however physical necessity may or accidental circumstance might cause time to be occupied in the actual performance. (Sutherland, J., *Phelps* v. *Phelps,* 28 Barb., 143; S. C., 23 N. Y., 76; *Fletcher* v. *Ashburner,* 1 White & Tudor's Leading Ca. in Eq., notes at page 800 to 808, 3 Am. ed.; 1 Fonblanque's Eq., 419 Book 1, Ch., 6, § 9, and note to 4th Am. ed.; Leigh & Dalzell on Eq. Conv., 48; Lewin on Trusts, marg. page, 793; *Craig* v. *Leslie,* 3 Wheaton, 577; *Crabtree* v. *Bramble,* 3 Atk., 687; 2 Kent,

230, marg. paging, note C; *Kane* v. *Gott*, 24 Wend., 659; 5 Barb., 196; 8 Paige, 40; Prec. on Chanc., 543.)

5th. The law favors the vesting of estates, and there is no ground for implying a trust estate during the supposed interval between the death of the widow and the division. The duties imposed do not call for an estate, and are such as may properly be performed under a power. (*Duffield* v. *Duffield*, 3 Bligh N. S., 331; *Dubois* v. *Ray, supra; In re Merrick's Trusts,* Law R., 1 Eq. Cas., 557; *Mendham* v. *William,* Law R., 2 Eq. Ca., 399; *West* v. *Miller,* Law R., 6 Eq. Ca., 63; *Rathbone* v. *Dyckman,* 3 Paige, 29; *Tucker* v. *Tucker, supra.*)

*Second.* The possibility that the surrogate might decline to act could not defeat the testator's disposition. The authority to the surrogate is a trust power, and he cannot defeat the devise or bequest by refusing to act. Equity will perform the act itself, or, if needful, appoint a trustee. (Lewin on Trusts, 526, 693, 694 to 697, side paging; Sugden on Powers, 8th ed., p. 50, note F; 2 Story Eq. Jur., § 1061; *King* v. *Donnelly,* 5 Paige, 46; *De Peyster* v. *Clendining,* 8 Paige, 309; *People* v. *Norton,* 9 N. Y., 176; *Withers* v. *Yeadon,* 1 Rich. Eq., 324, 325, 229; *Gibbs* v. *Marsh,* 2 Metc., 243, 251; *Thorp et al.* v. *McCullum et al.,* 1 Gilman, 614, 630.)

*Third.* The explicit devises and bequests to the sons in words of the present tense, gave them, at the testator's death, an immediate estate or interest in remainder; the conveyance by the executors being altogether unnecessary. If the limitation over in case of death is construed as referring to a death after the wife's decease, and that limitation should be void, then the devises and bequests to the sons would be absolute. Per Lord Cottenham, *In re Bartholomew's Trusts,* 1 MacNaghten &. Gord., 359. Per Lord Hatherly, *Martin* v. *Martin, supra; Dubois* v. *Ray, supra; Rixley* v. *Lane,* 35 N. Y., 349, 350; 2 Washburn on Real Property, 2 ed., 357; *Leonard* v. *Burr,* 18 N. Y., 103; *Church on Brattle Square* v. *Grant,* 3 Gray, 156; Lewis on Perpetuities, 657.)

*Fourth.* The executors are vested with a valid trust estate in the residuary during the widow's life.

1st. A trust to receive the rents and profits of real estate during the life of one person, and to pay part to that person, and in defined proportions to several others in their lifetime, is good in any view. (*Leggett* v. *Perkins,* 2 Comst., 297.) But it is the settled doctrine that where a trust estate is duly constituted being for a legal trust purpose, and not transcending the duration prescribed, that is, two lives in being, it is sustainable, though the trust purpose do not consume all the rents and profits, and though the testator direct an application of the surplus to other uses. (*Phelps* v. *Pond,* 23 N. Y., 81 to 83; *Gilman* v. *Reddington,* 24 N. Y., 12, 19; *Hamson* v. *Hamson,* 36 N. Y., 543; *Savage* v. *Burnham,* 17 N. Y. R., 569; *Haxtun* v. *Corse,* 2 Barb., Ch. R., 516, 517; *Boynton* v. *Hoyt,* 1 Den., 53, 58; *Rogers* v. *Tilley,* 20 Barb., 639; 1 R. S., 726, § 40.) 1. The singular includes the plural. (1 R. S., 778, § 11; *Stewart* v. *Brown,* 4 Trans. Ct. Appls., 503.) 2. Where one valid express trust is created, it will support a devise of the lands, and a possible surplus of the rents and profits may be applied, as in the exercise of a power in trust. (2 R. S., 729, §§ 56, 58, 59; *Downing* v. *Marshall,* 23 N. Y., 380; *Tucker* v. *Tucker, supra; Belmont* v. *O'Brien,* 2 Kern., 403, 404.) 3. Or it may be deemed the exercise of a trust arising or resulting "by implication of law." (1 R. S., 728, § 50; *Hawley* v. *James,* 5 Paige, 462, 483, 484.)

2d. Unless restrained from such a construction by the strong rule against implying an illegal intent, the court must adjudge the allowances to the children during the widow's life to be vested beneficial interests, *pur autre vie,* which, in case of his or her death before the widow, would pass to the decedent's executors or administrators, thus, indirectly, affording a means of support for his or her family, if he or she should leave any. (*Rawlings* v. *Jennings,* 13 Vesey, 45; *Stokes* v. *Heron,* 12 Cl. & Finnelly, 16I; *Hill* v. *Potts,* 8 Jur. Rep., N. S., 555, very clear; *Ross* v. *Borer,* 31 Law J., N.

S., Chan., 709, cases cited; *Mansergh* v. *Campbell*, 6 Lond.
Jur., N. S., 1207; S. C., 25 Beavan, 547, aff'd 3 De Gex &
J., 236; *Henrion* v. *Bonham*, Drury's Rep., tem. Sugden,
pp. 476, 479; *Kerr* v. *Mid. Hospital*, 2 De Gex., M., and
Gord, 583.)

3d. The merely contingent *direction* to accumulate one-
half of any unhoped for surplus income, which might possibly
accrue during the widow's life is simply void. No other
effect is produced by this voidness than leaving this portion
of the income undisposed of. Like any other income which
might not be legally disposed of by the will, it would pass
as the common-law or statutes prescribe. The statute avoids
the unlawful *direction* only; not the *estate* with which it may
be incidentally connected. (1 R. S., 726, § 38; Ib., 774,
§ 4; *Hawley* v. *James*, 5 Paige, 481; *Boynton* v. *Hoyt*, 1
Denio, 58; *Haxtun* v. *Corse*, 2 Barb., Ch., 506; *Craig* v.
*Craig*, 3 Barb., Ch., 92; *Lang* v. *Ropke*, 5 Sandf. Supr. Ct.,
371; *Williams* v. *Williams*, 8 N. Y., 538; *Kilpatrick* v.
*Johnson*, 15 N. Y., 324; *Phelps* v. *Pond*, 23 N. Y., 80, 82;
*Gilman* v. *Reddington*, 24 N. Y., 19; *Levy* v. *Hart*, 54
Barb., 262.)

4th. The consequences claimed in the next preceding
divisions 1st, 2d and 3d, apply to the income of the person-
alty, in some cases with precisely equal force, and in others
with even greater force. Some of the cited cases related to
personalty, some to realty and some to mixed funds.

The article concerning " Uses and Trusts " does not apply
to personal property. (*Gott* v. *Cook*, 7 Paige, 534; *De Pey-
ster* v. *Clendining*, 8 Paige, 304; *Kane* v. *Gott*, 24 Wend.,
660 to 663; *Arnold* v. *Gilbert*, 5 Barb., 199; *Brown* v.
*Harris*, 25 Barb., 136; *Savage* v. *Burnham*, 17 N. Y., 571;
*Forsyth* v. *Rathbone*, 34 Barb., 408; *Gilman* v. *Reddington*,
24 N. Y., 12; *Genet* v. *Beekman*, 26 N. Y., 41; *Everitt* v.
*Everitt*, 29 N. Y., 71, 90; *Bucklin* v. *Bucklin*, 1 Keyes' N.
Y. R., 148; *Bunn* v. *Vaughan*, Transcript Appeals, vol.
1, p. 348; S. C., 3 Keyes' N. Y. R., 345; *Emerson* v. *Bleak-
ley*, 3 Transcript Appeals, 102.)

*Fifth.* The preceding points show that the conclusion of the General Term was erroneous. No other material question can fairly be suggested on the construction or effect of the will, except such as may arise upon the testator's ulterior dispositions in favor of the children or issue of his daughters.

1st. Briefly stated, these dispositions are as follows:

1. If the daughter leave minor children, the trustees are directed to divide her two-twelfth parts into as many shares as she may leave children, and to retain one of such sub-shares for each child, and to accumulate the income thereof until the child for whom it is so retained shall attain twenty-one, and then to pay to such child his or her said sub-share, with its accumulations; provided, however, that if such child, during minority, shall be in need of any portion of said income for his or her support, the trustees are to apply the same accordingly.

It will be seen that, in one event, the trust estate in each sub-share *may* continue until the majority of that child of the daughter for whom it may be so retained. But, at that time, if not before, the ownership of each child in its sub-share will become absolute and indefeasible.

2. In case any such minor child of a daughter shall die during his or her minority, *leaving lawful issue,* the said sub-share goes at once to such issue. It will be seen that, in this event, the trust estate in the sub-share would *cease instantly* on the death of the minor child for whom it was retained in trust; and an absolute and indefeasible ownership would vest instantly.

3. In case a minor child of a daughter should die during his or her minority, *without leaving lawful issue,* then such sub-share is to go at once to the survivors of his or her mother's children. It will be seen that, in this event also, the trust estate would, in like manner, *cease instantly* on the death of any minor child of a daughter, his or her sub-share vesting instantly in his or her surviving brothers and sisters in an absolute and indefeasible ownership.

In the events numbered 2 and 3, it is important to observe that the estate of the trustees *instantly ceases,* and an *absolute ownership* supervenes, according to the terms of the will under consideration. In this respect this will differs *substantially* from the wills considered in the cases of *Savage* v. *Burnham* (17 N. Y., 561), and *Harrison* v. *Harrison* (36 id., 543). Like events as those above specified as 2 and 3 were provided for in those two wills, but in quite a different method from that adopted by Mr. Manice. Instead of giving an absolute interest to some one at once on the death of the minor, as Mr. Manice's will does, those wills *continued* the estate of the trustees for the benefit of others. The decisions in those two cases denounced as void such continuing estates in the trustees; but nothing else was thereby defeated.

4. Every child of a daughter, who, surviving her, shall be *of age* at her decease, will take his or her sub-share *instantly and absolutely.*

And, lastly:

5. In the case of a daughter of the testator *dying without issue,* then the two-twelfths held in trust for her is to be "conveyed, transferred and paid over" to the testator's heirs-at-law in the proportions in which they would inherit real estate of the testator.

In this event, the estate of the trustees must cease instantly upon the death of a daughter.

In each of the events numbered 4 and 5, the estate of the trustees can endure but for *two lives only,* to wit, the lives of the widow and a daughter.

In each of the events numbered 1, 2, and 3, the estate of the trustees in some portions of a daughter's share may endure beyond two lives, to wit, in the event numbered 1, until the majority of a daughter's child, and in the events numbered 2 and 3, until the decease under age of a daughter's child. It may be that the trustees have no estate in any sub-share after a daughter's death.

The importance of keeping clearly in view the several and distinct alternate estates created, to take effect upon the decease

of a daughter, is forcibly shown in the opinion of MITCHELL, J., in the case of *Fowler* v. *Depau* (26 Barb., 232–235).

2d. It may be convenient to state here the several questions to which these ulterior dispositions concerning each daughter's share may give rise.

*Firstly.* After one or two lives in being, may a *direct legal remainder* in lands be limited to one *not* in being at the testator's death and made defeasible, with an ulterior remainder over in case such prior remainder-man should die in his minority?

*Secondly.* If such a defeasible remainder may lawfully be created, then may an accumulation of the rents and profits be directed for such prior remainder-man during his minority?

*Thirdly.* If both of these things may lawfully be done in respect to direct legal estates or limitations, then may they be effectuated through a trust? In other words, does the rule against perpetuities operate on trust estates, or on beneficial interests under a trust of lands, in a manner substantially different from its mode of operation on direct legal estates or limitations?

*Fourthly.* In the respects indicated by the preceding questions, first, secondly, thirdly, is there any difference between dispositions of land and dispositions of personal property?

Sixth. Viewing the dispositions of a daughter's share (say, for instance, Mrs. Lockwood's), as direct limitations of legal estates in land, the testator's dispositions do not transcend the new statutory rule against perpetuities.

1st. The rule at common-law was, that property might be rendered inalienable for a life or lives in being at the death of the testator, and for an absolute term of twenty-one years thereafter, with a slight possible extension in a certain contingency. (*Cadell* v. *Palmer*, Tudor's Leading Cases on Real Prop. and Conv., note, p. 359; *S. C.*, 1 Clark & Finnelly, 372; 1 Jarman's Powell on Devises, 388, note 1.)

2d. The revisers intended to limit the lives by allowing only two, instead of an indefinite number. They intended also to abolish altogether the absolute term, and to allow in

its stead an actual minority. They state this precise intent in their notes; and the text of the statute which they framed develops it, and expresses it unmistakably. (3 R. S., 572, 573, 2d ed., note; 1 R. S., 723, §§ 14, 15, 16, especially the latter.) The New York General Term, per MITCHELL, J., held such a limitation to be good. (*Fowler* v. *Depau*, 26 Barb., 232–235.) Chancellor WALWORTH intimated his belief to the like effect in *Bowers* v. *Smith* (10 Paige, 195, 203). 1 Revised Statutes, 726, section 37, by its second subsection, provides for an accumulation in this precise case, which proves the intent and confirms the effect.

1. Chancellor WALWORTH intimates, in 10 Paige, 203, a possible doubt whether the first remainder must not be a vested remainder. It is not perceived why this should be so. The statute (1 R. S., 723, § 16) does not in terms require it; and, since the Revised Statutes, there is no substantial difference between a vested remainder, defeasible in case of death before twenty-one, and a remainder contingent upon attaining twenty-one; for, in the latter case, the rents and profits are actually vested under section 40. (1 R. S., 726; *Kelso* v. *Cuming*, N. Y. Ct. App., Dec., 1868, not reported.)

2. The remainders to the daughters' issue are of the kind which are vested according to the definition of the statute in section 13 (1 R. S., 723), and on the words of the devise. And they would have been deemed vested at common-law. (*Paterson* v. *Ellis*, 11 Wend., 259; *Everitt* v. *Everitt*, 29 N. Y. R., 76, 82, 97; *Phipps* v. *Ackers*, 9 Cl. & Finnelly, 583; 5 Simons, 44; *Whitter* v. *Bremridge*, 35 Law Jour., N. S., Chancery, 807; S. C., Law R., 2 Eq. Cas., 736; *Egerton* v. *Brownlow*, 4 House of Lords, 1; *Randfield* v. *Randfield*, 8 House of Lords, 225; *Cropton* v. *Davis*, 20 Law Times, N. S., p. 30; Tudor's Leading Cases on Conveyancing, pp. 380, 381; Redfield on Wills, vol. 2, pp. 592–641; *Gilman* v. *Reddington*, 24 N. Y., 16.)

3. The indulgence to paternal solicitude here contemplated by the revisers, is in exceedingly apt harmony with a common desire and with their general design. They meant to

allow a suspense during the life of persons in being and known to the testator. Commonly, these would be his children. They also designed to permit the fee to be further held in suspense until the next generation could effectively take; that is to say, as to each member thereof, until he had attained his majority. These being the objects in view, an authority to accumulate income during the minority was obviously proper. In fact, the established rules as to the management of infants' estates substantially impose on all trustees or guardians a duty essentially similar. Allowing the testator or other settler to name another recipient of the accumulated fund intended for a grandchild, in the unanticipated event of his death before attaining his full age, seems very appropriate. It must necessarily have been done by the general law of succession, if not done by the testator.

3d. The authority given in subsection two of section thirty-seven (1 R. S., 726), to direct an accumulation of the rents and profits during a minority for the benefit of a minor, not required to be in being at the testator's death, is plainly an attendant upon the privilege given by section sixteen, to create in such a minor an expectancy defeasible by death in his minority. A comparison of the two subsections amounts to a demonstration that this construction is sound.

Seventh. The rule against perpetuity under the Revised Statutes, as at common-law, is precisely the same in respect to direct legal estates, and in respect to beneficial interests under a devise or other settlement in trust. The policy of the law must be the same in respect to both. Common sense and common convenience, as well as legislative and judicial consistency, always required that a perfect analogy should exist in this respect; and the Revised Statutes enacted it.

1st. As to that branch of the law involved in this question, the revisers had in view two purposes only: First, to limit the period during which alienation might be suspended; and secondly, to restrain the creation of permanent trusts in lands to cases of necessity. (3 R. S., 572, 585, 2d ed.) As to direct legal estates, the provisions in respect to cutting off all

such future estates as transcended the due limit effected the first object. The narrow limit within which trusts were allowed, section fifty-five, and sections sixty, sixty-three, and sixty-five (1 R. S., 729), accomplished the latter. But here the very peculiarity presented itself to the revisers, which Vice-Chancellor McCoun noticed and, erroneously, acted upon in *Costar* v. *Lorrillard* (5 Paige, 223, 224).

A trust is always constituted through the medium of a legal estate in the trustee. Such legal estate is a present estate, and was and still is, by the settled principles of law, equal in quantity or duration to the legal purposes of the trust. The enactments in sections 14, 15, 16 (1 R. S., 723), already adverted to, framed for the purpose of cutting down the term of inalienability, applied in terms to future estates only. They could not be applied to the interest of the *cestui que trust ;* for, by section 60, that was expressly declared not to be an estate; a like close interpretation would prevent their application to the trustee's estate, for that was a present estate. If the revisers had stopped here, the old English rule against perpetuity, allowing any number of lives in being, would have remained in respect to trust estates and the interests under them. The revisers aimed at a perfect analogy ; so they inserted section 36. (1 R. S., 725.) Upon the plainest principles of construction, this effectuated their object.

2d. The revisers enacted their new rule against perpetuities in such a form as to cut off only those future estates which, if permitted to stand, would, of themselves, suspend the power of alienation. (1 R. S., 723, §§ 14, 17.) No special provision was needed to make this conservative principle applicable to trust estates, and the beneficial interests taken under them, though, in fact, there is one. (1 R. S., 730, § 67.) No principle of the common-law was more familiar or more firmly established than the rule that, under devises in trust, the trustees take precisely such an estate, in quantity or duration, as is requisite to answer or feed the lawful purposes of the trust. Whatever granting words may

be employed, or if none be employed, the result is the same; the estate of the trustees is measured by the lawful trusts confided to them. (Lewin on Trusts, p. 249; Fletcher on Trustees, p. 48; *Doe* v. *Edlin*, 4 Ad. & El., 589; *Barker* v. *Greenwood*, 4 M. & Welsby, 429; *Doe* v. *Nicholls*, 1 B. & Cr., 336; 1 Powell on Devises, 221, note 7; *Serg't. Wms'. Arg't*, *Doe* v. *Ironmonger*, 3 East, 535; *Brewster* v. *Striker*, 2 Comstock, 33; *Striker* v. *Mott*, S. P., 28 N. Y., 82; *Irving* v. *De Kay*, 9 Paige, 530; BEARDSLEY, J., 5 Denio, 653.)

3d. The language of 1 Revised Statutes, 725, section 36, is exceedingly apt. The phrase "dispositions of the rents and profits," is applicable only to the beneficiary's interest, for it describes that, and is descriptive of nothing else. It does not describe the trustee's estate; he takes the legal estate in the land itself.

4th. Whatever, in their day, may have been the effect of *Amory* v. *Lord* (5 Seld., 403), and some previous judgments and dicta, there has been, ever since, an uniform and controlling current of authority establishing a perfect analogy between direct beneficial devises of legal estates and devises in trust, in this; if the illegal part, as a posterior estate or interest, is separable from what is lawful, it shall be cut off and annulled, leaving in full force the sound and lawful part. The notion that, because something unlawful is "enveloped in the same trust," the whole trust estate must fail, is no longer countenanced in our law.

Eighth. The rule against perpetuity, established by the Revised Statutes in respect to personal property, is precisely the same as in respect to real property; and, consequently, the positions above assumed in respect to the realty apply to the share of each daughter and her issue in the personalty, and require that the testator's dispositions of the latter should also be sustained.

1st. The intent of the Revised Statutes to establish this analogy is very manifest, and the observations made upon the analogy between legal and equitable estates apply here with equal force.

2d. In framing the provisions of title four, concerning "accumulations of personal property and expectant estates therein," it seems to have been thought that the formula "power of alienation" used in enacting the rule against perpetuities concerning real estate was unsuitable in legislation concerning personalty; so, instead of it, the phrase "absolute ownership" is employed. The latter, wherever it occurs, must be read as an equivalent for the former. (1 R. S., 773, § 1; 724, § 23; 726, § 40; *Emmons* v. *Cairns*, 3 Barb., S. C. R., 244, 245.) The first section of this fourth title (1 R. S., 773) was designed to apply the general rule deducible from sections 14 and 15 in the statute concerning estates in land (1 R. S., 723) to personal property, and the second section was designed to apply to *future* interests in personalty, the various analogous provisions of the same system, including section sixteen. There may be a degree of awkwardness in the application, arising from the change of phraseology, but this can easily be overcome. Statutes are to be construed according to the reason of the thing and the obvious intent.

1. If the principle of section 16 in the statute concerning real estate did not apply to personal property, then a testator could not direct personalty to be accumulated for any after-born minor; yet, in section 3 of the statute concerning accumulations of personalty, there is, by similar distinct subsections, a perfect match for section 37 of the statute concerning accumulations of realty. Here, in section, 3 subsection 2, concerning personalty, as there in section 37, subsection 2, concerning realty, we find authority to direct an accumulation during minority for the benefit of a *minor who may have come into being subsequently to the testator's death.* That, in each case, provision for one unborn at the testator's death was contemplated, is perfectly clear by the contrast in this respect in each section between their respective subsections 1 and 2.

2. Unless the analogy now claimed is adjudged, section 3, subsection 2, of the statute concerning personalty must

be regarded as altogether nugatory. (Revisers' Notes, 3 R. S., 578, second edition.)

Ninth. In respect to the rule against perpetuities, it has always been the law that there was a perfect analogy between legal estates and beneficial interests, and also between estates in land and interests in personal property. The intent of the Revised Statutes to keep on foot instead of abrogating these analogies is apparent. A design for the abolition of either would be so unwise that it should not be imputed to the legislature.

1st. As to the ancient analogy, see Lewis on Perpetuity (pp. 139, 162, note L); Ibid, 166, 574; Jickling's Analogy of Legal and Equitable Estates (preface, p. ix.); per Lord BROUGHAM, *Phipps* v. *Acker* (9 Cl. & Finnelly, 599); per Lord HARDWICKE, *Hopkins* v. *Hopkins* (West's Rep., 662).

2d. It was continued under Revised Statutes, per DENIO, J., *Everitt* v. *Everitt* (29 N. Y. R., 71).

3d. In construing revisions it will not be supposed that a change of the pre-existing law was intended unless the words clearly indicate it.

Tenth. The direction to accumulate the sub-shares for the minor grandchildren, respectively, cannot be sustained except upon the principles above asserted, which are sufficient to uphold the whole disposition of each grandchild's sub-share; and if that direction be not valid, then it should be adjudged that each grandchild takes, at his or her mother's death, a direct legal estate in his or her sub-share of the lands, and a direct ownership in his or her sub-share of the personalty.

1st. The so-called trust to divide each daughter's share between her children is valid as a power, but it gives no estate. There is no express authority to take the rents and profits; and unless the direction to accumulate such sub-share after a daughter's death during her child's minority can be sustained, no active duty is devolved upon the executors. (1 R. S., 727, §§ 47, 48, 49 ; *Everitt* v. *Everitt*, 29 N. Y., 79 to 82; *Fisher* v. *Hall*, 41 N. Y., 424.)

2d. The doctrine that trusts suspend alienability has no application to personal estate. (See cases before cited.)

Eleventh. If, as to the real or personal property, the conditional limitations over on the death of any daughter's child in minority can be deemed too remote, then those limitations alone are void; and the precedent estate in the lands and precedent interest in the personalty given to the daughter's child, vesting as they do *within* the rule, *i. e.*, at the end of two lives in being, are valid. And they vest in the taker an absolute estate not defeasible by the event of the taker's death in his or her minority.

1st. The primary and leading object of the testator, in this branch of his dispositions, was to provide for his daughters' children, and the implied defeasance is not for the purpose of abridging the interest of the first taker, but actually to confirm it, by letting in the ulterior limitation in favor of such first taker's heirs-at-law and next of kin. If that object cannot be attained by it, the defeasance, being in the nature of a condition subsequent, should not be kept in force for the naked purpose of divesting a vested estate or interest and defeating the manifest intent. (PECKHAM, J., in *Lovett* v. *Gillender*, 35 N. Y., 621, 622.)

2d. If these limitations over are not valid, this treatment of them is absolutely forced upon the court. The will does not limit over any sub-share on the death of a first taker in minority, unless to his or her issue, or to his or her surviving brother or sister. There are no express words of defeasance divesting the vested interest of the first taker, and the persons indicated by the limitation over are his or her heirs-at-law and next of kin. The ulterior limitation to the testator's heirs-at-law is only on a total failure of the daughter's issue at *her* death. This is the natural import of the words, and their construction is declared by statute. (1 R. S., 724, § 22; Id., 773, §§ 1, 2; Id., 748, § 2.)

3d. This construction would harmonize with a multitude of adjudications in giving full effect to a lawful general intent by the sacrifice of a subordinate particular intent.

HAND — VOL. IV.    44

Twelfth. If the dispositions in favor of the daughter's issue could not be sustained, their invalidity would not affect the dispositions in favor of the daughters themselves, or those in favor of the sons and their issue. In that view of the case, the court would be bound to establish all the provisions of the will, except the interest intended for the children or issue of each daughter after her death ; and as to that alone could an intestacy be declared. This result would be very unfavorable to the daughters and their families; but it is not sought by the sons. (*Oxley* v. *Lane,* 35 N. Y., 349, 350.)

Thirteenth. If the direction to accumulate one-half of the surplus income during the widow's life is void, that portion was and is, by law, distributable from time to time to or among the person or persons presumptively entitled to the next eventual estate. (1 R. S., 726, § 40.)

1st. The doubt expressed by SELDEN, J., in *Phelps* v. *Pond* (23 N. Y., 83), whether this 40th section applies to income arising from personalty is, as he admits, purely *obiter.* Independently of the numerous decisions that it does so apply, the words of the section themselves are conclusive. It uses the term " absolute ownership " in addition to " power of alienation." The first is peculiarly appropriated by the statutes to personal property, and the latter to realty ; consequently, there can be no doubt but the legislature intended to include both kinds of property.

2d. The following authorities declare the effect of the section to be as claimed in this point. Some of them refer to each kind of property. (*Hawley* v. *James,* 5 Paige, 483 ; *Haxtun* v. *Corse,* 2 Barb. Ch., 518 ; *Craig* v. *Craig,* 3 Barb. Ch., 93 ; *Kilpatrick* v. *Johnson,* 15 N. Y., 326 ; *Gilman* v. *Reddington,* 24 N. Y., 19 ; *Kelso* v. *Cuming,* Court of Appeals, per BACON, J., not reported ; *Schettler* v. *Smith,* 41 N. Y., 340.)

1. The persons appointed to receive as heirs-at-law of the testator, in case a daughter should leave no issue, would take the mixed fund, not by descent under the statute of descents, but by and under the will. There are no words of direct gift

to these so-called heirs. They can take only by the transfer, payment over, and conveyance to them, which the will directs to be made. Of course, none but such as may be in life, and competent to take under these acts at the time when they are to be performed, can ever take under them. The direction of the Special Term in this respect is right. (*Savage* v. *Burnham*, 17 N. Y., 573, 574; 1 Redf. on Wills, 393, § 21, and cases cited in note 42; *Locke* v. *Lamb*, Law R., 4 Eq. Cas., 375, reviewing the cases, especially *Leake* v. *Robinson*, 2 Merivale, 387.)

3d. Whether this half of the surplus income goes in whole or in part, under section 40 of the article concerning estates, to the persons presumptively entitled to the next eventual estate under the will, or, as undisposed of, to the heirs and next of kin, the defeat of this accumulation cannot interfere with any *other* intent of the testator, or materially prejudice any object of his bounty.

1. The persons presumptively entitled to the next eventual estate are the sons and the children of the daughters. If the 40th section applies, the sons will take their shares as the income accrues, instead of being obliged to wait until the widow's death; and the children of the daughters take in like manner, instead of being obliged to await the death of their mother and grandmother. The *immediate* interest thus accruing to each daughter's minor children would be, under all common circumstances, a greater benefit to such daughter than any advantage which might result to herself directly from the interest accruing to her upon two-twelfths of this accumulated fund, treating them according to the will as capital to be invested for her benefit at the widow's death.

2. If the 40th section does not apply, then this one-half of the surplus rents, profits and income must pass, as it accrues, under the statutes of descents and distributions. In this case the daughters would receive directly the whole of a fund in which no more than a partial interest was intended for them. The sons, indeed, would receive somewhat less in amount than the testator designed for them; but as they would receive it

at an earlier period and in a more convenient manner, the prejudice to them is scarcely appreciable.

4th. It thus appears that the voidness of this direction to accumulate affects no one appreciably. Nothing worthy of notice fails, except the accumulation itself; and the terms of the will show very plainly that that was not a cherished design of the testator.

5th. If this one-half of the surplus income does not pass under section 40 of 1 R. S., 726, as claimed in this point, then it must be distributed according to the statutes of descents and distributions. And, as the testator's clause of exclusion was only intended to bar her from any interference with *his will*, the widow's election has no further effect. She may lawfully claim a widow's share in all that the testator's heirs or next of kin, in opposition to the testator's declared testamentary intent, procure to be distributed, as undisposed of by him. (*Pickering* v. *Stamford*, 3 Vesey, 335; *Gartshore* v. *Chalie*, 10 id., 17; note to 3 Smale and Gifford, 90, 91.)

Fourteenth. All that was due to Mrs. Lockwood at her death, from whatever source derived, and all that may accrue as her share, under the provisions of Mr. Manice's will, during the widow's life, belonged to Mrs. Lockwood as her personal estate; and, as she was domiciled in Connecticut, the laws of that State govern the succession thereto. The findings of law and the judgment of the Special Term applied those laws correctly.

1st. Two-twelfths of that one-half of the surplus income accruing during the widow's life, which is not effectually disposed of, are assignable to this branch of the testator's family; but they go to Mrs. Lockwood's children, under 1 R. S., 726, § 40, as presumptively entitled to the next eventual estate. Mrs. Lockwood had no interest therein, nor has her husband.

2d. In the event of that section of the statute not being deemed applicable, Mr. Lockwood might, perhaps, be entitled, as tenant by the curtesy, to so much of this undevised half of the surplus income accruing between Mrs. Lockwood's death and that of the widow, and during his own life, as has been or may be derived from the testator's real estate. In so much

of the said undevised half of said surplus income, accruing as last aforesaid and derived or to be derived from the testator's real estate as last aforesaid, the portion to which Mr. Lockwood might have a title by the curtesy is one-fifth (subject, however, to the widow's dower), that being the proportion to which his wife, Mary C. Lockwood, was entitled, under the statute of descents, in any real estate of her father, not effectually devised by him.

Fifteenth. The legacy to Yale College is good, and it ought to be sustained.

*Edwin W. Stoughton,* for Caroline A. Grant and her husband, Gabriel Grant and *Marshall S. Bidwell,* for Frances J. M. Smith and her husband, J. Tuttle Smith.

*First.* If an estate be so limited that by any possibility the power of alienation may be suspended for more than two lives in being at the creation of the estate, such limitation is void, and the estate does not vest. The estate must be so limited that some person or persons in being can convey an absolute fee in possession within the duration of two lives after its creation. The statute applies as well to present as to future estates. (16 Wend., 120, 178, 221–2, 212–13; 5 Seld., 416; 14 Wend., 266; 1 R. S., 723, §§ 14, 15, p. 773, § 1.)

*Second.* In this case the trustees were bound to hold and could convey only in conformity with the trusts and conditions prescribed in the will. Every sale, conveyance or other act in contravention of these would be void. (1 R. S., 730, § 65; *Hawley* v. *James,* 16 Wend., 21–2; *Costar* v. *Lorillard,* 14 Wend., 303.) Nor could the beneficiaries convey. (1 R. S., 730, § 63.) The sixteenth clause devised and bequeathed the whole residue *in trust* for the *uses and purposes* thereafter declared and intended, to vest the entire legal and equitable title of the testator in the trustees. (5 Seld., 411–12–13–16; 1 R. S., 727, §§ 59, 60.) During the continuance of the trust estate, if there was no person in being who could convey an absolute fee in possession, then if such estate might by possi-

bility continue a longer period than two lives in being; if by any limitation it was not made dependent on lives, but upon some other event, such estate *was void from its creation,* and the property goes as in case of intestacy.

*Third.* The entire legal and equitable estate being undoubtedly intended to be vested in the trustees, it is insisted that this estate so vested was not dependent for its duration upon human life, but upon events independent of human life; and also so far as it is made to depend upon lives, is or may by its terms be suspended for a longer period than is allowed by the statute.

1st. The duration of the trust estate in the whole is limited upon the appraisal and division of the estate into twelve parts. This could not be performed in the lifetime of the widow, and by the very terms of the will the sons and daughters might die before such division. It is clear, therefore, that the absolute power of alienation of the residuary estate was or might be suspended for more than two lives in being.

2d. The trust could not be performed upon the assumption that the shares of either sons or daughters might vest upon the death of the widow, and before appraisement and division. Looking at the provisions of the will with reference to the release of the widow's dower, the improvement of the real estate devised to the sons in the sixth clause, and option given to the sons to take the Lake Superior lands at a valuation fixed in the will at the time of the division, etc., it is apparent that the trusts under the will were such that the trust must continue until after the appraisal and distribution. (7 Barb., 597.)

1. An appraisement was necessary before division and before shares could vest. *a.* It would be manifestly unjust to permit the sons, who were to take one-half the residuary estate not only *to appraise,* but to choose the shares they should deem it for their interest to take. The sons were executors. To permit the sons to participate in the appraisement and in making the division, in which the daughters

were to have no voice, was what the testator did not intend. Hence he declared the residuary estate should, on the death of his wife, be appraised by three competent persons, one to be chosen by the executors, and one by the surrogate, and third by the two thus chosen. *After* such appraisement, the sons, as executors, might make the division; but they could not secure an *unjust* advantage as to value. *b.* An attempt by the trustees to divide and assign without appraisement, would have been void. The daughters were entitled to an appraisement. *c.* Appraisement was matter of substance; not mere form in the view of the testator. The appraisers could not even be chosen until *after* the death of the widow. Their appointment might occupy considerable time. The appraisement could not commence to be made until *after* appointment, and could last as long as the appraisers thought proper. They *must* occupy a period *not* dependent for its duration on human life. *d.* Even if appraisement was not a necessary preliminary to division, it was nevertheless the intent of the testator, and that cannot be disregarded. (*Beekman* v. *Bonsor*, 23 N. Y., 514–15–16.)

The appraisement was not only indispensable to the division, but a necessary prerequisite to the vesting of the shares in the sons, or their issue, or the issue of the daughters. The trustees being vested with power to sell any of the lands at any time before division, and after the death of the widow, they were to determine whether it was most advantageous to sell the houses and lots, or to appraise and divide them among the sons and daughters. This provision renders it clear, that the trustees were to retain the trust estate until the division. And if it be said that the title vested subject to the power in trust to the trustees to cause an appraisement, then the power of alienation was suspended for a period not depending on lives, for it could not be known when they would exercise this power of appraisement and apportionment, or whether they would not exercise their discretion to sell.

2. It being impossible to divide without an appraisement, it is clear that if the share did not vest until after a division,

the trust estate would not depend upon lives, and would be unlawful.

*a.* The nature of the duties imposed upon the trustees render it indispensable that their estate should continue until after division.   An appraisement being made, the trustees then must divide the property into twelve equal parts, then to determine which three shares went to each son, which two shares to each daughter, and *until then it could not be known what property each was to own and enjoy.*   They were to convey their shares to the sons, they were to *retain* and hold in trust the daughters' shares.   Neither son was entitled to three-twelfths of the entire residuary estate, and neither daughter to two-twelfths, but were to receive specific pieces of real estate as part of their shares selected by the trustees. Until this was done, neither child could know of what his shares were to consist.   Neither could assert an exclusive right to any particular part of the estate.   Nor could the trust estate terminate until such share were thus set apart, for until then, neither trustee or sons could know of what pieces of property the shares were to consist.

Again, the election given to the sons *at the time. of the division,* to take the Lake Superior lands, at a sum in the will specified, and the power to the trustees to sell these lands in case the sons did not so elect, rendered it necessary that the title should remain in the trustees.

*b.* The provision that the trustees may, out of the whole residuary fund, any time *before* division, and the particular share of the fund of the daughters held by them in trust *after the divison,* rebuild any houses or building destroyed by fire, shows the *intent* of the testator, that the whole estate should remain in the trustees until the division.

Again, the direction that the trustees may give good and *sufficient deeds of conveyance* in fee simple of the lands, and this at the time of the division, is inconsistent with the title previously vesting immediately on the death of the widow.

Again, the conveyance to the sons by the trustees, is only to be *at the value at which the shares are appraised.*   The

shares could not vest in the sons, therefore, until after appraisement, for until appraisement, they are incapable of identification.

Again, the provision that the devise is upon the further trust, in case of the death of either son, *prior to the time of distribution*, to convey, transfer, and pay over to his *then* living lawful issue; and the further provision that in case of the death of one of the sons without issue, *living at the time of the division*, then the surviving son, or in case of his death, his issue *then* living shall take and inherit the share of such deceased son, are both wholly inconsistent with the vesting of the shares in the sons at the death of the widow.

Fourth. In answer to the suggestion, that the trust ceased on the death of the widow, subject to the power in trust conferred upon the trustees.

1st. This interpretation violates the plain terms of the clause which gave them, the trustees, the entire estate to hold until the trust confided to them should be performed, and the part assigned to the daughters they were to *retain*, and hold the same in trust for them.

2d. There is no authority in the will, for holding that the trust estate has been converted into a mere power in trust.

1. The grantees of the alleged power are beneficiaries, and could not take a power in trust. (1 R. S., 734, § 94; 14 Wend., 361–2.)

2. The subject of the trust was one for which an express trust could be created, and hence could not be turned into a power in trust. (1 R. S., 729, § 58; 16 Wend., 174.)

3. The trustees took for the entire trust term sought to be created or not at all; and if not at all, then the estate descended at the testator's death (1 R. S., 729, § 58) subject to the execution of the power, and no absolute fee could be conveyed until its execution, and this being so, alienation was suspended for more than two lives. (*Hones' Executors* v. *Van Schaick*, 20 Wend., 566.)

Fifth. The absolute power of alienation of the shares intended for the daughters and their issue was unlawfully

HAND—Vol. IV     45

suspended, for reasons independent of those already urged.

1st. The provision is that the trustees are to retain and hold as trustees for each of the daughters, two-twelfths in trust, to apply the net income to the use of each during her life and after her death, or after the *time of such distribution, in case she has previously died,* to divide the two-twelfths into as many portions as there should be children of hers living at her decease, and retain one of said shares with its accumulations for each of said children during his or her minority, and on his or her arriving at the age of twenty-one years, to pay him or her such share; but if he or she die before coming of age, leaving lawful issue, such share to be paid to such issue, but in case of his or her death during minority without issue, such share to go to the survivors of said children, and in default of issue of testator's daughter, her share to go to testator's heirs-at-law. By these provisions, the power of alienation of the three daughters' shares is suspended, *a,* during the life of the widow; *b,* during the life of the daughter; *c,* during the minority of all her issue; *d,* to be conveyed possibly after these to the heirs-at-law of the testator, to whom the shares could not go, if they vested in the daughters or their issue.

The power of alienation being thus suspended as to one-half the residuary estate, it would be so unjust to hold, and hostile to the testator's intent, the clause void only as to that half, and have it descend equally among the sons and daughters, that the court should declare the whole sixteenth clause void.

Sixth. The direction for accumulation of one-half the surplus income was void (1 R. S., 793, § 3), and the effect of this, coupled with the suspension of the absolute power of alienation of the entire residuary estate, of the value of about $1,100,000, worked such essential changes in the testator's scheme for the disposition of his property, as to render not only that clause, but the entire will, inoperative and void.

1. The law of the land, which, with great precision, and upon solid grounds of public policy, has undertaken to pro-

hibit the accumulation of personal and the suspension of the power of alienation of real estate, beyond certain limits, distributes both among heirs and next of kin, upon principles well calculated to encourage men to labor for the accumulation of property during their lives ; and, in the case before the court, no disposition of the large estate in question could be more equitably made than that provided for by our statutes of descents and distribution. The court need not, therefore, hesitate to leave the task of division to the law, if the will has substantially failed so to do by reason of the illegality of its provisions.

2. The amount accumulated before these proceedings were commenced, from half the surplus, was considerably more than one hundred thousand dollars : and as this accumulation was, by the testator, intended to be continued during the life of his widow, it is evident that this purpose entered largely into the scheme by him formed for the increase and ultimate division of his great estate.

If the testator had been told at the time he was preparing this will, that his scheme for accumulation was unlawful, who can say what disposition he might have made of this surplus, or, indeed, of other portions of his property ?

3. But if we are right in saying that the residuary estate he intended to create by means of suspending the power of alienation is void, is it not very clear that for this cause alone, so important a part of his scheme has been frustrated, that the entire will should be held inoperative ?

4. Consider the effect upon the scheme devised by the testator, of declaring void the trusts for accumulation, and for preserving the residuary estate, in the manner and for the purposes declared by him.

a. To the daughters he directed to be paid $1,500 each per annum. In addition to this they were to receive annually two-eighteenths of one-half of the surplus to be accumulated during the life of the widow. This surplus during each year has lately averaged, and no doubt will continue to yield, about $50,000. Should the mother live for the period of another

seven years, as she is quite likely to do, and as we trust she
will, the accumulation would reach about $350,000, and would
form a part of the residuary estate to be divided. Of this
each daughter is to have set apart to her for life two-twelfths,
to the income of which she, if *alive* at the time of the divi-
sion, is to be entitled. The principal of this would be about
$58,000; interest on which, at six per cent, would amount to
$3,480. Now, on the assumptions made, we find that the
scheme of the testator would yield to each of his three daugh-
ters annually, upon the death of the widow, this sum of $3,480,
nearly three times the sum specially directed to be annually
paid to each.

Judge INGRAHAM, at Special Term, in holding this trust
for accumulation unlawful, also determined that no part of
the accumulated surplus, and no part thereafter to accumu-
late, neither principal or interest, should go to either of the
daughters. Considering the large sum accumulated, and
likely to be, the appropriation made of it by the will of the
testator, the trifling sum directed to be paid to each daugh-
ter, independent of the surplus, the large income each would
probably receive from it, and bearing in mind, too, that the
testator, in disposing of his property, intended it to go as
directed, and not otherwise; and who can say that he would
have made a will in any respect substantially like that in
question, had he known the trusts, as to the surplus and its
accumulations, were to be declared void? And especially,
if informed that half of the surplus so accumulated would
be immediately paid to his sons, and none whatever to his
daughters? And who is authorized to speak for the dead,
and say he would have made so inadequate provision for
daughters whom he loved, and provision so unreasonably
large for sons? Looking at the failure of his scheme for sur-
plus and accumulation alone, and a court would, it is submit-
ted, be authorized to declare the whole will, or, at least, the
sixteenth clause thereof, utterly void.

*b.* It must be assumed, however, as we think, that this
court will adopt the conclusions of the General Term, and

hold that the absolute power of alienation of the residuary estate sought to be devised by the sixteenth clause of the will was unlawfully suspended for more than two lives in being, at its creation; and this being so, it is submitted that the whole will should be declared inoperative. Consider why this ought to be so.

The provision, for the widow, of $8,000 per annum, together with six-eighteenths parts of one-half the surplus, and the right for life to the house and stable, the testator intended she should accept in lieu of dower in his real estate. Assuming the surplus to be as stated, her whole income would not be less than $16,000 per annum; and this she has, no doubt, been willing to receive, instead of dower and her proportion, as widow, of the personal estate.

This formed an important element in the testator's scheme. But observe how, in the main, it is to be frustrated, by holding the sixteenth clause inoperative to convey the estate intended. He devised to his sons, for life, the unimproved real estate mentioned in the sixth clause of his will. He saw that their title to it would be such that it might be difficult for them to borrow money for the purpose of improving it. Hence he empowered his executors to loan them upon it, for that purpose, not to exceed $75,000, of the funds which should be in their hands of the residuary estate. These funds, the sixteenth clause being inoperative, the executors, cannot thus employ. The provision for the widow being destroyed, she is entitled to dower in the real estate so attempted to be devised to them, and in the improvements made thereon. She is also entitled to dower in all the real estate sought to be devised by the sixteenth clause. The devise to her, for life, of the house and stable is also void; and, instead thereof, she takes only a right of dower therein. She becomes entitled also to her distributive share of the testator's personal estate. The parcels of real estate which he had specially directed to become part of the several shares of each of his children and their issue, descend to them as heirs-at-law. And in view of all these changes and obliterations of the testator's plans for

the distribution of his large estate; in view, too, of the fact that the character, situation and prospects of his children are such that no sound reason can be stated why they should not receive equal portions of it, it is respectfully but earnestly submitted that the will should be declared inoperative, and the entire estate sought to be disposed of thereby decreed to descend and be distributed as in cases of intestacy. (*Clemens* v. *Clemens;* *Coster* v. *Lorillard,* 4 Wendell, 265; *Hawley* v. *James,* 16 Wendell, 61; *Root* v. *Stuyvesant,* 18 Wendell, 257; *McSorley* v. *Wilson,* 4 Sandf. Ch. R., 515; *Davis* v. *Clark,* 3 Selden, 242; *Amory* v. *Lord,* 5 Selden, 403; *Van Beuren* v. *Dash,* 30 N. Y. R., 426.)

*c.* If the court shall decline to adopt this view, it is submitted with entire confidence, that the whole of the residuary estate must be adjudged to pass as in cases of intestacy, as decreed by the court below, not only upon the ground that the clause for accumulation is confessedly illegal, but also because of the unlawful suspension of alienation, as heretofore urged.

*John K. Porter* (*Wm. Henry Arnoux* with him), for Wm. B. E. Lockwood, administrator of Mary C. Lockwood.

First. Where the actual and primary intent as collected from the whole instrument, is in harmony with the policy of the law, the court will *aid* it by construction; but when it is subversive of that policy, the same principle favors a construction which will defeat it. (Ch. J. SAVAGE, in *Paterson* v. *Ellis,* 11 Wend., 294; TURNER, Vice Ch., in *Robinson* v. *Governors of London Hospital,* 10 Hare, 28; S. C., 21 Eng. L. & Eq., 376; S. P., 2 Jarman, 766, 3d ed., rule 24.)

Second. The primary intent was to suspend alienation of the bulk of estate until the actual division, and to augment that bulk by intermediate accumulations.

Third. The shares in the trust estate given ultimately to the sons were not intended to and do not vest until the division by the trustees.

1st. That it was the actual intention of the testator that they should not, is perfectly manifest. (This proposition is enforced in the points by numerous illustrations and arguments, drawn from the provisions of the will, generally similar to those in the points for the daughters, Grant and Smith, *supra.*)

2d. By the *terms of the will* the shares intended for the children or their issue under the sixteenth clause are not to vest until the time of such division.

3d. The rule that in determining what was the intention of the testator, when he has left it in *doubt*, the court will incline in favor of such intent as will accelerate the vesting and sustain the devise, has no application where the actual intention was manifestly otherwise. (*Travis* v. *Morrison*, 28 Ala., 498.)

4th. The primary rule of construction is to favor the heirs-at-law and next of kin, where the evident intention of the testator was to make a disposition of her property, which the law forbids. (*Van Kleek* v. *Dutch Ch.*, 6 Paige, 612, *cited and approved* 33 New York, 562; S. C., 20 Wend., 469.)

5th. The words " to whom I give, devise and bequeath the same," inserted in the clause directing the trustees on the division to *convey* two of the shares thus ascertained, do not make it a gift *in presenti.* (*Travis* v. *Morrison, supra ;* 1 Jarm. on Wills, 3 Eng. ed., 797; *Knight* v. *Cameron*, 14 Ves., 389 ; approved 1 Hare, 12; *Hunter* v. *Judd*, 4 Simons, 458–9.)

6th. Applying these rules of construction to the clear expressions of the testator's intent, it is plain that the gifts to the children or to their issue were not to vest until the division, when alone it could be ascertained what property should enter into each share and to what donees the shares should respectively be conveyed. (*Elwin* v. *Elwin*, 8 Ves., 547; *Curtis* v. *Lunkin*, 5 Beavan., 147 ; *Thorburn* v. *Thorburn*, 14 Scotch Session Ca., p. 455, No. 147.)

Fourth. The effect of these provisions, as well as of the further limitations and conditions to the gifts on the daugh-

ters' side, was to suspend the absolute power of alienation of the real and the absolute ownership of the personal for an indefinite period not measured by lives. (1 R. S., 723 *et. seq.*, §§ 14, 15; Id., 773, § 1, 728, § 55.) The provisions of these statutes apply as well to present as future estates. (*Coster* v. *Lorillard*, 14 Wend., 265; *Hawley* v. *James*, 16 Wend., 61; 5 Seld., 426; 9 Barb., 344.) In respect of the legacies to the daughters or their issue, the testator authorizes an illegal suspension of absolute ownership until issue *not in being at his death* shall attain the age of twenty-one. And in respect to their legacies, as well as to the sons, he suspends it until the division to be made after appraisement, election, etc.

*Fifth.* The dispositions made by the testator are equally illegal, if regarded as creating a mere power in trust. A perpetuity can no more be created by the execution of a power than by the creation of a trust estate, and the period of suspension must in such case be computed from the creation of the power. (1 Rev. Stat., 737, § 128; *Costar* v. *Lorillard, supra; Hawley* v. *James, supra; Hone's Ex'rs.* v. *Van Schaick*, 20 Wend., 567.) And the further objection to the power exists in this case that the two sons, who are grantees of the power, are beneficially interested in its execution. (1 R. S., 734, §§ 94, 95; 14 Wend., 362.)

*Sixth.* The express and implied directions for accumulations are illegal and void. (1 R. S., 773, §§ 3 and 4; Id., 726, §§ 37, 38; *Haxtun* v. *Corse*, 2 Barb. Chy. R., 518; *Harris* v. *Clark*, 3 Seld., 247.)

*Seventh.* The invalidity of the principal provisions affecting the bulk of the estate subverts the whole scheme of the testator, on the basis of which other provisions were framed, and they are so connected the whole should be declared void. (*Harris* v. *Clark, supra; Amory* v. *Lord*, 9 N. Y., 403.) These unanimous decisions are claimed by the other side to have been overruled by decisions of the same court. (*Savage* v. *Burnham*, 17 N. Y., 561; *Harrison* v. *Harrison*, 36 N. Y., 543.) They are, on the contrary, entirely consistent with the others and with our proposition.

Eighth. The court below erred in directing that before the executors should pay to the administrator of Mrs. Lockwood's estate the share of the testator's personal property, to which she was entitled, he should give such security as the court might approve.    (1 Williams on Ex., *c*, 726, approved 32 N. Y., 45; *Whale* v. *Booth*, 7 Tenn. R., 726, *n.*; *Sutherland* v. *Brush*, 7 John. Ch., 17; *Harper* v. *Bortle*, 2 Peters, 239; Westlake Private International Law, 291; *Lynes* v. *Coley*, 5 N. Y. Surrogate R., 408; *Dawes* v. *Boyston*, 9 Mass., 358; *Jenison* v. *Hapgood*, 10 Pick., 100; *Dawes* v. *Head*, 3 Pick., 128; *Parsons* v. *Lyman*, 20 N. Y., 124; Connecticut Statutes, 1866, p. 304, § 23, p. 303; *Fisk* v. *Cobb.*, 6 Gray, 144; *Kuhn* v. *Webster*, 12 Gray, 3; *William* v. *Cotton*, 3 Jones' N. Car. Eq. R., 120; *Raney* v. *Heath*, 2 Potter & Heath Va. R., 206.)

Ninth. The husband's right of tenancy by the curtesy has not been abolished.    (*Thurber* v. *Townsend*, 20 N. Y., 517; *Hurd* v. *Cass*, 9 Barb., 366; *Clark* v. *Clark*, 24 Barb., 581; *Lansing* v. *Gulick*, 28 How., 250; *Jaycox* v. *Collins*, 26 How., 496; *Kinley* v. *Smith*, 14 Wisc., 360; *Mut. Ins. Co.* v. *Deal*, 18 Maryland, 26; *Houston* v. *Brown*, 7 Jones' N. Car. R., 161.)

*Charles H. Woodruff*, for the guardian of Mrs. Lockwood's children, submitted a brief claiming, among other points (common to the other defendants) that Mr. Lockwood had no tenancy by the curtesy, that having been abolished by the statute.)

*Wm. R. Darling*, for the infants, Charles M. and De F. Grant.

*Chas. H. Tweed*, for Yale College.

RAPALLO, J.    The most prominent question discussed upon the argument of these causes, and that which should first be determined, is, whether the legal estates given by the sixteenth clause of the will to the two sons of the testator, and the trust

estates created for the benefit of his three daughters and their issue, take effect in actual enjoyment immediately on the death of the widow, or whether a trust term is created, to continue from the death of the widow until the completion of the division of the testator's residuary estate, during which term the title to the property is vested in the trustees.

It is clear that, if such a trust term is created, or even if the ownership of the property is suspended during that interval, the dispositions of the will created an illegal suspension of the power of alienation of the real estate, and of the absolute ownership of the personal property; for, until the expiration of that indefinite period, not measured by human life, the persons in whom the estates or interests will vest cannot be ascertained, and they may be persons not in being at the death of the widow.

It is claimed, on the part of the respondents, that, according to the terms of the will, a trust was created, to commence at the time of the death of the widow, to appraise, sell, and divide the property, and that the intention of the testator and the legal effect of the will were to vest the entire estate in the trustees, and render it inalienable while that trust was being performed; and it has been urged that it was a part of the testator's scheme that, during the continuance of that trust estate, the entire income of the property should be accumulated for the benefit of those of his descendants who might be in being when the division should be completed.

Such an intent would be manifestly illegal, and, unless clearly expressed, will not be implied or imputed to the testator. (*Dubois* v. *Ray*, 35 N. Y., 165, 167, 175; *Keilly* v. *Fowler*, Wilmot's Opinions, 298; *Tucker* v. *Tucker*, 1 Seld., 408; *Post* v. *Hover*, 33 N. Y., 601.)

Upon a careful examination of the whole will, we are unable to discover any expression of an intention, on the part of the testator, to create such a trust term, or to direct such an accumulation.

No trust or power in the executors to receive or apply the rents and profits after the death of the widow is to be found

in the will, except as to the shares directed to be set apart for the daughters respectively.

There is a general devise of the residuary estate to the executors in trust for the uses and purposes set forth in the will; but such a general devise in trust vests the legal estate in the trustees only for such legal purposes as require it to be vested in them, and in other respects it is inoperative. (*De Kay* v. *Irving*, 5 Denio, 653; *Downing* v. *Marshall*, 23 N. Y., 366, 380, 381; *Everitt* v. *Everitt*, 29 id., 78, 79, 82.)

Until we come to the trusts created for the benefit of the daughters, the only trust or authority to receive or apply the rents or income is, "to collect and receive the rents, issues, income, dividends and interest of said residuary real and personal estate, and to use and apply the same, *during the lifetime of my wife*, as follows."

All right or power under this clause to receive the rents would cease at the death of the widow. Even if it could be doubted whether the words, "during the lifetime of my wife," expressly apply to and limit the duration of the authority to receive the rents, etc., there can be no doubt that they do expressly limit the time during which they are directed to be applied; and when a trust is created to receive and apply rents, the trust to receive them, though the period of its duration be not defined in the instrument, is, by operation of law, limited to the period during which they are directed to be applied.

There being no direction for the application of the rents and profits during the time to be consumed in the appraisement and division, no trust to receive them during that time can be implied; and none having been expressly given, the consequence is, that, during that period, they are undisposed of, unless the legal estate of the sons and the trust estates for the daughters take effect, and the sons and the trustees for the daughters are entitled by virtue thereof to possession of the property at the death of the widow of the testator.

The trust during the alleged interval is, therefore, a naked trust to cause to be appraised, to sell, and to divide into shares,

unaccompanied by any right in the trustees to receive the rents and profits.

The trust to sell is one of those authorized by the statute, but, if unaccompanied by the right to receive the rents and profits, it vests no estate in the trustees, though it is valid as a power. (1 R. S., 729, § 56.)

The trusts to appraise, divide and convey the shares are not authorized by the statute, but are proper subjects of a power, and are not void because the testator has attempted to put them in the form of trusts, but can be executed as powers (1 R. S., 729, § 58; *Downing* v. *Marshall*, 23 N. Y., 380, 381.)

The will which was construed in the case of *De Kay* v. *Irving* (5 Denio, 649), closely resembles the one now under consideration. It contains the same features of a direction to apply the rents and profits to the support of the testator's family while his estate is undivided, a power of sale, a direction to cause to be appraised and to divide into shares, which can only be ascertained by means of the appraisement, and which are to include designated pieces of property, and a general devise of the whole estate to the executors in trust to carry into effect the purposes of the will. But it was decided by the Court of Errors that, notwithstanding this gift in trust, the executors took no estate except for the purposes which required that the title be vested in them; that, therefore, they held in trust during the life of the widow, for the purpose of the application of the rents and profits up to the time appointed for the partition, if she should so long live; but that the direction to make partition did not require the title to be vested in the executors, as it might be performed by the exercise of a naked power, and created no suspense of the power of alienation; and the decree of the chancellor sustaining the will was affirmed. (See opinion of BEARDSLEY, J., p. 654, *Downing* v. *Marshall*, 23 N. Y., 380.)

Upon the same principle, in the present case, no estate will vest in the trustees during the time to be employed in making the partition, but the supposed trust to make partition can be performed in the exercise of a power.

The objection that the time to be consumed in making the partition may be indefinitely protracted, is applicable to every case where such a power is given, and the effect of such delay upon the validity of the disposition depends in this, as in all similar cases, upon the solution of the next question which is to be considered, viz. : whether, during that time, the ownership is suspended, or whether the estates of the sons and of the trustees for the daughters are vested interests and will become indefeasible on the death of the widow; for if the estates are thus vested the undivided shares of the sons will, at the widow's death, at once become alienable, and while the partition is being made the lives will be running, during which the suspension caused by the trusts for the daughters and their issue can lawfully continue, and no suspension of the power of alienation will be caused by delay in the partition.

Should there be any unreasonable delay in making the partition, there can be no doubt that a court of equity would have power to enforce the performance by the trustees of their duties, and, if necessary, to appoint others to perform them; and this jurisdiction is ample, even to provide a remedy in case the surrogate should refuse to appoint an appraiser. (Lewin on Trusts 526, 694–697; Sugden on Powers, 8th Ed., p. 50; 2 Story's Eq., § 1061; *People* v. *Norton*, 9 N. Y. R., 176; *De Peyster* v. *Clendining*, 8 Paige, 310.)

Having disposed of the supposed estate of the trustees, we return to the question : In whom must the testator be deemed to have intended the right to the enjoyment of the estate to vest on the death of the widow?

In approaching that question, and before referring to the language of the gifts to the sons and to the trustees for the daughters, and determining their legal effect, it is proper to advert to some considerations which are suggested by the absence of any specific disposition of the rents and profits of the estate from the time of the death of the widow to the completion of the partition. This omission, so far from indicating an intention to postpone the taking effect of the gifts

of the shares to the sons and for the daughters, is quite consistent with the opposite intention, and it is difficult, if not impossible, to reconcile it with any other.

If these gifts took effect in actual enjoyment immediately upon the death of the widow, it was wholly unnecessary to make any mention of the rents and profits from that time forth, except as they are mentioned in the trusts for the daughters; for, while the appraisement and division were being made, the sons and the trustees for the daughters would be vested with the title to the whole property as tenants in common, and would receive the income of their respective undivided shares while the shares were being ascertained and separated. But if those gifts were not to take effect until after the completion of the division, and it was contemplated by the testator that any considerable time might elapse, or that changes of interest might occur during that process, some provision in regard to these rents and profits was indispensable to conform the disposition of these rents to the general scheme of the will.

To hold that the testator intended that they should be accumulated during that period, would not only be to attribute to him, by implication, an unlawful intent, but one which is at variance with the manifest design of the testator to provide for the support of his children. Such a construction would leave them wholly unprovided for during the supposed interval. No such intention is expressed or can reasonably be implied; while to hold that he intended to leave these rents undisposed of and to be divided among his heirs-at-law, according to their interests as such, would conflict with his clearly disclosed intention to give a preference to his sons in the amounts of their shares.

The arguments which have been urged for the purpose of showing that the testator expected and intended that the process of division should be protracted for a long period, if they were well founded, would only add to the improbability of his having intended that the enjoyment of the undivided shares should be suspended during that period.

By reference to the language of the gifts of these shares, it will be seen that each share is given by words of present gift. In respect to the sons the words are: "And upon the further trust to convey, transfer and pay over to my son William De Forest Manice in fee simple, *to whom I give, devise and bequeath the same,* or in case of his death to his then living lawful issue, three of said equal twelfth parts.

*      *      *      *      *      *      *

And upon the further trust, to convey, transfer, and pay over to my son Edward Augustus Manice in fee simple, *and I give, devise and bequeath the same to him,* or in case of his death prior to the time of such distribution, to his then living lawful issue, three of said equal twelfth parts."     *     *     *

In respect to each of the daughters the words are:     *     *   " And upon the further trust, to retain and hold as trustees under this my will, *and I give, devise, and bequeath to them accordingly,* two other of said equal twelfth parts, in trust," etc.

These clauses immediately follow that which commences with the words: "And upon the further trust, *upon the death of my wife,* to cause to be appraised," etc.

Thus it will be seen that the testator in each case makes a present gift directly to each of his sons or their issue, and to trustees for each daughter, of a specified share of his residuary estate, to be ascertained and meted out to them respectively by the executors, pursuant to the process which he has prescribed.

The estates of the donees are future estates limited upon the precedent estate of the trustees for the life of the widow. It is claimed by the respondents, that the vesting of these estates is postponed after the death of the widow until the completion of the division, and that the donees and beneficiaries of the trusts are not the sons and daughters or their issue living at the death of the widow, but those of them who shall be living when the division is completed.

It has already been shown that during this alleged interval to be occupied in the division, no estate can vest in the trustees; and the necessary consequence is that unless the estate is

vested in undivided shares to the donees, among whom the property is directed to be divided, it is wholly undisposed of from the death of the widow until the completion of the division, and the result of that construction is that these gifts are merely executory devises, to unascertained persons, to take effect at an indefinite future period not measured by life.

It has been established by a long series of decisions, that no such unreasonable intent will be imputed to a testator, unless ·so clearly and unequivocally expressed that no other construction can be placed upon his language. The court never construes a limitation into an executory devise when it may take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested. (6 Cruise Dig., 444, § 11; 3 T. R., 488, *Ives* v. *Leggett* note.) And it may be laid down as a general rule that where, by a will, shares or interests in real or personal estate, to be ascertained by a divison, are given, or where the real estate is directed to be sold and the proceeds divided, the estate or interest of the devisee or legatee in the property to be divided or converted, is a vested interest before the conversion or division, and that limitations over to take effect in case of the death of those first designated prior to the division or sale, must be held to refer to the time appointed for the division or sale, and not to the period of their completion, unless the language of the will clearly and unequivocally expresses an intention that the vesting shall be postponed until such completion.

If the intention is unequivocally expressed, effect must be given to it (*Elwin* v. *Elwin*, 8 Ves., 547); but such an intention will not be imputed to the testator if it can be avoided. (Roper on Legacies, 561, 8th ed. ; *Pearson* v. *Lane*, 17 Ves., 101 ; *Collin* v. *Collin*, 1 Barb. Ch., 630; *Clason* v. *Clason*, 6 Paige, 541; S. C., 18 Wend., 369 ; *Haydon* v. *Rose*, L. R., 10 Eq. Cas., 224.)

A similar rule is applied to gifts of shares or legacies to be paid out of a fund or surplus to be collected in or ascertained and divided, and in those cases the interests of the legatees are held to vest absolutely before the fund is collected, or the

surplus ascertained, or division actually made; and it is held that a limitation over to take effect in case of the death of the legatee before he has received his share, does not take effect, if the legatee lives to become entitled to it, though he die before it has been paid. (2 Jarman on Wills, chap., 20, § 3, p. 539, 2d Am. ed. ; *Gaskell* v. *Harman*, 6 Ves., 159, and S. C. on Appeal, 11 Ves., 490; *Wood* v. *Penoyre*, 18 Ves., 325, *In re Arrowsmith's Trusts*, 2 De Gex, Fisher and Jones, 474; *Hutchin* v. *Mannington*, 1 Ves., 366.) And this rule was applied in its full force to the case of a mixed fund of realty and personalty. (*Martin* v. *Martin*, L. R., 2 Eq. Cas., 404.) And where the terms of a bequest import a gift, and also a direction to pay at a subsequent time, the legacy vests and will not lapse by the death of the legatee before the time for payment has expired, but will pass to his personal representatives. (*Traver* v. *Schell*, 20 N. Y., 89; *Everitt* v. *Everitt*, 29 N. Y., 39.)

In *De Kay* v. *Irving*, the remainder after the expiration of a trust term was directed to be divided among four children, and a grandchild in a specified manner. The whole estate was given to the executors in trust to carry into effect the directions and provisions of the will. They were to ascertain and settle the shares. Those shares, as in the present case, were to be dependent upon an appraisement to be made prior to the division into parts, and specific parcels of the real estate were directed to be allotted to particular donees.

Every element of uncertainty as to the amounts or identity of the shares which exists in the present case existed in that. Until the division should be completed, neither of the parties could know whether he would possess in severalty any particular piece of property. Yet it was held that there was no suspension of the power of alienation. This conclusion must necessarily have been based upon the ground, that the children and grandchild had a vested estate in remainder in the lands and property directed to be divided. On no other ground can the judgment in that case be made to stand. The uncertainty as to the shares is no obstacle to such a vest-

ing; a vested estate can exist in an undivided share as well as in a specific piece of land; and it is not necessary that the share should be ascertained by separation, provided the rule for its ascertainment is established. The doctrine laid down in the head note to *Curtis* v. *Lukin* (5 Beavan, 147), that "a gift must not only *vest* within the time limited by the rule against perpetuities, but the interests of the respective parties in the property must be capable of ascertainment within that period," is not in conflict with this principle. It is not necessary that the shares should be actually ascertained and set off in severalty; is sufficient that the interests are vested and capable of ascertainment. The objection in *Curtis* v. *Lukin*, was not that partition was necessary to ascertain the shares, but that an indefinite sum was to be taken out before partition, and that the amount thus to be taken out could not be ascertained within the time allowed by law for suspension of ownership.

But for the alternative provisions in this will, providing for the contingencies of death of sons or daughters before the division, there can be no doubt that an indefeasible estate in remainder was created by the will in favor of each son, which vested in him immediately upon the death of the testator, and which would pass to his heirs or assigns if he died, or conveyed before the death of the widow, and that a future estate for a new trust term was given to the trustees for each daughter. These remainders were limited upon the precedent trust estate for the life of the wife, and upon her death, each would be seized and possessed of an undivided interest in the realty and personalty, subject only to the exercise of the power of division and sale given to the executors. (1 R. S., 729, §§ 56 and 58; *Irving* v. *De Kay*, 5 Denio, 646.)

The effect of those alternative provisions remains to be considered in this connection.

The gift to the son William is made to him by name, and the direction is to convey to him, or in case of his death to his *then living* lawful issue. This gift immediately follows the clause beginning with the words: "And upon the fur-

ther trust upon the death of my said wife to cause to be appraised," etc.

If it clearly appeared in the will, that the testator contemplated changes of interest by the death of his son intermediate the death of the widow and the partition and conveyance of the share by the trustees, there would be strong ground for the argument that the term "*then living*" was intended to apply to the time of the conveyance of the share by the trustees, and to defeat the estate given to the son in case he should die before the actual ascertainment of the shares, though he might be living at the death of the widow. But in the absence of any expressions in the will, showing that such a change of interest was contemplated, and in view of the confusion and illegality which would result from so construing the will as to regard the testator as having intended to defeat the estate given to his son in that contingency, and paying due regard to the authorities heretofore cited, which forbid such a construction where any other is possible, we are led to the conclusion that although, literally construed, the language of the testator is consistent with the theory of the respondents, yet it is also consistent with the view that the testator contemplated the appraisement, division, and conveyance of shares as a single act to be done immediately upon the death of the widow ; that he did not undertake to measure or provide for the time which might be occupied in effecting the partition, but in all his dispositions assumed that the parties living at the death of the widow, and those who were to receive the shares in severalty would be the same, and that he intended that their estates and interests should become absolute on the widow's death.

The numerous special provisions as to the income which would have been necessary, as has already been shown, to secure a consistent operation of the testator's general scheme, in case he had contemplated any such change of interest pending the partition, and the absence of any such provisions, are strong evidence that no such change was in his mind. And we think that the intention of the testator can only be

effectuated by construing the various provisions, in case of the death of his sons and daughters, as applicable to their death before the time appointed for the division, and the estates as indefeasible, if they live until that time.

This construction can be sustained and effect thereby given to the intentions of the testator by the application of the rule that equity looks upon that as done which ought to have been done, and will treat the subject-matter as to collateral circumstances and incidents in the same manner as if the contemplated act had been performed exactly as it ought to have been done. By the application of this principle to agreements, acts agreed to be done are considered as done at the time agreed upon; and by its application to wills, acts lawfully directed to be done are regarded as done at the time directed. On this principle rests the doctrine of equitable conversion. (1 Story's Eq. Jur., § 64, *g.*; 2 id., §§ 790, 1212, 1214; *Lorillard* v. *Coster,* 5 Paige, 218; *Bunce* v. *Vander Grift,* 8 Paige, 37, 40; *Craig* v. *Leslie,* 3 Wheat., 577; 1 Fonblanque's Eq., 419, 420, bk. 1, chap. 6, § 9, 4th Am. ed.; *Fletcher* v. *Ashburner,* 1 White & Tudor's Leading Cases in Eq., 3d Am. ed, notes, p. 808; *Kane* v. *Gott,* 24 Wend., 660; Sugden on Vendors, chap. 4, § 1; chap. 16, § 1; Lewin on Trusts, 793.)

Under the operation of this rule, the rights of those who might succeed the testator's children in case of their death pending the partition, would be the same as if the partition had been completed immediately upon the widow's death, and they would take by descent from those living at the widow's death, and not as purchasers.

In the case of Edward Augustus, the language is somewhat different. It is, " and I give, devise and bequeath the same to him, or, in case of his death prior to the time of such distribution, to his then living lawful issue."

This language is quite reconcileable with the idea that the time of distribution referred to by the testator was the time he had appointed for the distribution, and that all rights were to become fixed at that time.

The next provision is, " and in case of the decease of either of my said sons prior to such division, having no lawful issue living at the time of such division, then my surviving son, or, in case of his death, his lawful issue then living, shall take," etc.

Similar language has already been judicially construed by the Court of Errors of this State in the case of *Clason* v. *Clason* (18 Wend., 369). BRONSON, J., in delivering the opinion in that case, says: " I think Isaac Starr Clason took an absolute fee at the end of the term of twenty years from the death of the testator ; that by the words ' before a division shall be made,' and ' before such division shall be made,' in the clauses which dispose of the estate in the event of the death of one or more of the sons, the testator did not intend an actual partition of the property, but referred to the time which he had already appointed for making the division."

And to the same effect is the late case of *Haydon* v. *Rose* (L. R., 10 Eq. Cas., 224). In the devises in trust for the daughters, the expression is, " time of said distribution," and in conformity with the decisions cited, must be construed as referring to the death of the widow. A criticism is made upon the language of the clause directing an appraisement to precede the division of the property into shares ; and it is said that the time appointed for the division was after the appraisement, and not upon the death of the widow. We think that this would not be a reasonable construction of the language, but that the appraisement was only one of the steps in the division, and that the testator intended to include all these proceedings in the general term, division or distribution of his estate, as used in the subsequent clauses of the will

Our conclusion is, that, there being no trust estate inter-posed between the death of the widow and the estates given to the sons and the trustees for the daughters, those persons would, in case of the death of the widow, have an immediate right to the possession in severalty of the lands specifically directed to be included in their shares, and to the possession and enjoyment as tenants in common of the residue of the

real estate and of the personal property, subject to the powers of sale and division contained in the will; that each of the trust estates created for the benefit of the daughters is a future estate in trust, limited upon the trust for the life of the wife; and that the direction to retain, together with the gift of the share to the trustees, creates a new estate in them, commencing from the death of the widow, in the same manner as if new trustees had been appointed to take for the benefit of the daughters; that, upon the death of the widow, the remainders to the sons or to their issue then living will become indefeasible, and the estates of the trustees for the daughters and their issue, or such of them as may be living, will also become indefeasible until the expiration of the trusts; and that, if the terms of any of said trusts shall have expired before the death of the widow, those shares will thereupon go to the issue of the daughters, or to the testator's heirs-at-law, as directed by the will.

The next question to be considered is the validity of the trusts to accumulate the income of the sub-shares during the minority of the issue of the daughters, and of the limitations over of those shares in case of the death of such issue in infancy. In these respects it is claimed that there is an illegal suspension of the power of alienation.

This question will be examined first in respect to the real estate. We are of opinion that under the provisions of the Revised Statutes (1 R. S., 723, §§ 15, 16, 726, § 37) a remainder in fee in real estate, to take effect upon the termination of two lives in being at the time of the creation of the estate, may be limited to a person not in being at that time; that a direction to accumulate the rents during the minority of such remainder-man, and for his benefit if he should be *in esse* and an infant when the precedent estate ceases, is also authorized. And that in such a case a further contingent remainder, in favor of a person not in being at the creation of the estate, may be limited to take effect in the event that the person to whom the remainder is first limited shall die under the age of twenty-one years.

These dispositions are not subject to the objection that they suspend the power of alienation beyond the prescribed period. The suspension must terminate at the expiration of two lives in being, and the further term of suspension caused by the contingent limitation which is to take effect upon the death, during the minority, of the child to whom the remainder in fee is first limited. This is within the limits intended and permitted by the exception contained in section 16. The revisers, by means of that section, intended to adopt the English limit of suspension, viz., lives in being and twenty-one years afterward, with a modification reducing the lives to two and providing that the twenty-one years, instead of being an absolute term, must depend upon the continuance of the minority of the person to whom the defeasible remainder in fee is limited. (See Revisers' Notes, 3 R. S., 571, 572, 2d ed; 5 Statutes at Large, 306, 307.)

The suspension being created by the contingent limitation of the fee, the accumulation during the minority of the first person designated as taker does not add to the term of suspension, and it is sanctioned by the provisions of section 37. It commences within the time permitted for the vesting of future estates. A future estate must vest on the expiration of two lives in being at the time of the creation of the estate. The accumulation commences at a time which might lawfully be appointed for the vesting of a future estate, and therefore within the time permitted for the vesting of such estates, and it terminates with the minority of the beneficiaries. The sections harmonize with each other, and section 37 permits an accumulation of rents during precisely the same term which, by section 16, is permitted to be added to the period of suspension of alienation. These sections, read in connection, precisely cover the case of a disposition of the ultimate fee, after the expiration of two lives, in favor of a minor, an accumulation during his minority, and a contingent remainder over, if he should die during minority.

This accumulation also falls clearly within the limitations of the third class of accumulations allowed by the statute of

40 Geo. III, chap. 98, which it was the avowed purpose of our revisers to adopt, viz.: "During the minority of any person or persons who, under the deed or will would, if then of full age, be entitled to such rents and profits." (See Revisers' Notes, 3 R. S., 2d ed., p. 578.)

The objection that the persons to whom the remainder in fee is first limited, and those to whom the contingent remainder over in fee is limited, are not persons in being at the time of the creation of the estate (viz., the time of the death of the testator), is not supported by any provision of the statute. There is no prohibition against the limitation of such estates to persons not in being. The requirement that the two lives, during which the suspension is allowed in all cases, should be those of persons in being at the time of the creation of the estate, is plainly expressed in the general provision. But the further suspension allowed by the exception is not stated to be upon any such condition. Such a restriction would be inconsistent with the purpose of the exception, and so limit its operation as to render it of but little avail.

Neither do the provisions authorizing accumulations require that the minor for whose benefit the accumulation is to be made should be in being at the death of the testator, unless the accumulation is to commence at his (the testator's) death. If it is to commence at a subsequent period, the beneficiary must be in being at the time of the commencement of the accumulation, otherwise it cannot be said to commence during the minority of the person for whose benefit it is directed. An accumulation for the benefit of an unborn child, to commence after the birth of the child, and to terminate with his minority, is lawful, provided that it is also to commence within the time permitted for the vesting of future estates, that is to say, on the expiration of two lives in being; but an accumulation for the benefit of an unborn child, to commence before his birth, is not permitted under any circumstances, and this was the objection to the validity of the accumulations in the cases of *Haxtun* v. *Corse* (2 Barb. Ch., 518), and *Kilpatrick* v. *Johnson* (15 N. Y., 322).

It is also requisite that the accumulation be for the benefit of the minor during whose minority it is to commence and continue. A mere contingent limitation of the estate in favor of the minor on his coming of age, would not be sufficient to sustain a trust or direction for accumulation during his minority; and this renders it necessary to examine whether, under the provisions of the will, the infant children of the testator's daughter, would, on the death of the daughters, have such an estate in the lands that the accumulations can be held to be for their benefit within the intent and meaning of the statute.

This question is suggested by the form of the devise, and will now be considered not only with regard to the accumulations, but also with regard to the contingent limitation over of the fee in the event of the death of the daughters' children during minority.

The testator, instead of devising the estate directly to the children of the daughters, on the death of the daughters, and directing the income to be accumulated during the minority of the children, with remainder over in case of the death of such children in infancy, has in form continued the trust after the death of each daughter during the minority of her children respectively, for the purpose of accumulation, and directed that each child be paid his or her share of the principal on coming of age, with contingent remainder over in fee in case such child die under age.

In case of a daughter dying without issue her surviving, or in case at her death all her children are of full age, no question will arise, for in each of these cases the fee vests absolutely on the death of the widow and daughter.

But in case a daughter should die after the death of the widow and leave infant children, then it is necessary to ascertain the nature of the estate these children will take on the death of their mother.

The first question is whether the remainders to the issue of the daughters on the death of the daughters are remainders in fee within the meaning of section 16, so that a contingent

remainder in fee could lawfully be limited upon the estate of each grandchild, to take effect on his or her dying under age.

The direction to the trustees to pay over the principal of the share of each grandchild on his or her attaining the age of twenty-one years is a sufficient devise of the property and will vest it in the devisee. (*Gilman* v. *Reddington*, 24 N. Y., 11, 16.)

But it is said that as to each sub-share of a grandchild, the legal estate is vested by the trust for accumulation in the trustees until the majority of the grandchild, and therefore the remainder to the grandchild is merely a contingent remainder, dependent upon the contingency of the child being living at the termination of the trust.

That question does not necessarily affect the validity of the contingent remainder over in case of the death of the grandchild in minority. Assuming the remainders to the grandchildren to be contingent, yet they are remainders in fee which must become absolute as to each grandchild on his arriving at age, or the estate must vest absolutely in some one else if he die in minority, and the period of suspension is not affected by the question whether the remainders to the grandchildren are vested or contingent. Section 16 does not in terms require that the first remainder should be vested; it requires only that both remainders be in fee, so that within the period of a minority after two lives the estate shall vest absolutely in fee.

This appears to be the object of the section; and it not being necessary, in order to effect that object, to add anything by construction to its terms, we must hold that, under section 16, a contingent remainder in fee may be limited on a prior remainder in fee, vested or contingent, provided one or the other of the remainders in fee must vest in possession at or before the expiration of the minority of the person first designated. And this view is sustained by referring, in connection with section 16, to section 25 of the same article, which authorizes the limitation of a contingent remainder in fee upon a prior contingent remainder in fee. (See revisers' notes to § 25.) This

section provides that " two or more future estates may be created, to take effect in the alternative, so that, if the first in order shall fail to vest, the next in succession shall be substituted for it, and take effect accordingly." (See, also, *Egerton* v. *Brownlow*, 1 House of Lords, p. 1.)

Though both remainders be contingent, one of them must vest within the prescribed period, and the estate is not rendered inalienable any longer, in case the first is contingent, than if it had been vested and defeasible.

The legislature having permitted the estate to be made inalienable during the minority of the first remainder-man, by means of a contingent remainder over, it is wholly immaterial, with reference to the question of suspension of alienation, whether, during such permitted period of inalienability, an estate be vested or not in the person first designated. But, though that question may be immaterial, with reference to the validity of the remainders to the grandchildren, and the contingent remainders over in case of their death in infancy, it materially affects the question of the validity of the trusts or directions for accumulation during the minority of those grandchildren.

It has been shown that the conditions of the statute, as to the time for the commencement and termination of the accumulation, are not violated.

The questions now to be considered are, *first*, whether, at the time the accumulation is directed to commence, the grandchildren will have such an estate or interest in the land that the accumulation may be said to be for their benefit; and, *secondly*, whether any valid objection arises from the accumulation being made under a trust, instead of a mere direction or power.

If the estate or interest of the infants, present or future, in the land or the income, is sufficient to sustain the accumulation, there seems to be no valid objection to the trust during their minority. The trust is one of those expressly authorized.

The legislature having permitted the estate to be made inalienable during the minority of the first remainder-man

(who, as to each sub-share, will be the testator's grandchild), by means of the contingent remainder in fee, it is wholly immaterial, with reference to the question of suspension of alienation, whether, during that period of permitted inalienability, the legal title is vested in the infant or in trustees for his benefit; and if the infant has such an interest that the accumulation can be said to be for his benefit, the statute permits the accumulation during his minority; and it is difficult to see any objection to such permitted accumulation being effected by means of a trust.

The interest of the infant is, therefore, the only material point of inquiry. If his estate depended upon a mere contingency, an accumulation during his minority could not be said to be for his benefit, as he might never enjoy it, and would not be vested even with the right to the future enjoyment of it, until the contingency had arisen.

But a devise of lands to an infant, when he shall become of age, with remainder over, if he die under age, creates a vested, and not a contingent, estate in the infant. It is defeasible by condition subsequent. His coming of age is not a condition precedent to the vesting of his estate. Where nothing is interposed between the infant and his enjoyment of the possession of the estate, except his own minority, he has a vested estate, subject to be defeated by the condition subsequent of his dying under age.

This rule is well-settled in regard to real estate, though it is different, in some respects, as to personal property. (*Doe* v. *Moore*, 14 East, 604; Roper on Legacies, 571; *Roome* v. *Phillips*, 24 N. Y., 463; *Paterson* v. *Ellis*, 11 Wend., 259; *Everitt* v. *Everitt*, 29 N. Y., 76, 82, 97; *Phipps* v. *Ackers*, 9 Cl. and Finnelly, 583; *Kane* v. *Gott*, 24 Wend., 641; *Phipps* v. *Williams*, 5 Simons, 44; 2 Redfield on Wills, 592–641; *Gilman* v. *Reddington*, 24 N. Y., 16.)

The infant children of any daughter, who may survive their mother, will, therefore, have a vested estate in the lands, to take effect in actual enjoyment upon their attaining their

majority, and defeasible in case of their death before attaining twenty-one.

This is a sufficient title to sustain the accumulation, during their minority, for their benefit. It fulfills precisely the conditions of the third enumeration of the statute of 40 Geo. III, chap. 98, which the revisers intended to sanction and adopt, viz.: "During the minority of any person or persons who, under the deed or will directing the accumulation, would, if then of full age, be entitled to such rents and profits."

And the purpose of this accumulation is precisely that for which the revisers intended to provide, as appears by their statement, in their notes, that the purpose for which an accumulation ought to be sanctioned is for the benefit of infants entitled to the next eventual estate. (3 R. S., 578, 2d ed.)

These minors come within both of the definitions above referred to. At the time the accumulation is directed to commence they would, if of age, be entitled to the rents and profits, and they will also, at that time, be entitled to the next eventual estate. It is not necessary that a present estate in possession be vested in them during their minority, to authorize an accumulation for their benefit during such minority.

These views lead to the conclusion that, as to the real estate, the trusts to accumulate the rents and profits of the sub-shares during the minority of the children of the daughters, and the limitations over in case of the death of such children under age, are valid.

As to the personal estate, we have come to a different conclusion:

The limitation over in case of the death of a daughter's child during minority suspends the absolute ownership of each daughter's share of the personal property beyond the lives of the widow and daughter, and during the minority of the daughter's children, if she leaves infant children her surviving; and we think that the exception in section 16, which permits that suspension in case of real estate, is not applicable to personal property.

Section 15 of title 2, chap. 1, part 2, R. S., relating to real estate, declares that the absolute power of alienation shall not be suspended longer than two lives in being, *except in the single case mentioned in section* 16.

Section 1 of title 4 of chap. 4, relating to personal estate, declares that the absolute ownership of personal property shall not be suspended longer than two lives in being, and omits the exception which is contained in sections 15 and 16; and section 2 provides that, in all other respects, limitations of future or contingent interests in personal property shall be subject to the rules prescribed in relation to future estates in lands.

Section 1 covers the whole subject of suspension of ownership, and limits it to two lives absolutely. This clearly indicates an intention on the part of the legislature, that the further term of suspension allowed by section 16 should not be allowed as to personal property, but should be confined to real estate; and that in all respects other than the suspension of ownership, limitations of future interests in personalty should be governed by the same rules as estates in lands. The only difference made by the Revised Statutes between limitations of future estates in lands and future interests in personal property, consists in this provision as to the time of suspension. As to real estate, it is two lives in being and a minority; as to personalty, the limit is absolute to two lives in being.

The limitations over in case of the death of a daughter's child during minority must, therefore, be declared void as to the personal estate.

The trust for accumulation during the minority of the daughters' children is also void. An accumulation of the income of personal estate, if it is to commence at any period subsequent to the death of the testator, must be directed to commence " *within* the time allowed in the first section of this title *for the suspension of the absolute ownership*," which time is " during the continuance and until the termination of not more than two lives in being " at the death of the testator. (1 R. S., 773, § 1; 774, § 2.)

In the case of real estate the language is "within the time permitted for the vesting of future estates."

That provision allows an accumulation to commence at a time when a future estate might be allowed to vest, viz.: Immediately *after* the termination of two lives; but as to personal property it must commence *within* the period which is allowed to precede the vesting, viz.: "During the continuance and until the termination" of the two lives, and therefore, before the expiration of the second life. As these accumulations are not to commence until after the death of the widow and daughter of the testator, they are not within the provisions of the statute, and cannot be upheld.

The result of declaring void these directions for accumulation and the limitations of contingent remainders in the personalty after the death of the testator's widow, will be to give to the infant children of any daughter who may survive their mother the absolute title to so much of their sub-shares as may consist of personal property, and the right to the immediate enjoyment of the income from the time of their mother's death. (*Leonard* v. *Burr*, 18 N. Y., 103; 2 Washburn on Real Prop., 2d ed., 357; 1 R. S., 726, § 40.)

It does not seem to us, however, that the failure of these trusts or directions for accumulation during the minority of the daughters' children, and of the contingent limitations over in case of their death in infancy, will so far affect the general scheme of the testator as to render it necessary to declare the whole of the sixteenth clause void. A contingent ulterior limitation of a legal estate may be held void in such a case without impairing the validity of the other dispositions of the will. The general rule is that where the effect of such a limitation over is to abridge or defeat the prior estate, the result of such contingent limitation being held void for remoteness is that the person whose estate would be defeasible, if such contingent limitation were valid, takes the estate discharged of the condition or limitation over. (2 Washburn on Real Property, 2d ed., 357; *Leonard* v. *Burr*, 18 N. Y., 103; *Church* v. *Grant*, 3 Gray, 156.

And it is difficult to discover any principle which forbids the sustaining of the general intent of the testator by cutting off a void trust which is separable from other valid trusts, in a case where the trust which is defeated is independent of the other dispositions of the will and subordinate to them and is not an essential part of the general scheme.

In this case it seems to us that it is not essential to the testator's general scheme that this trust, even if it be treated as a trust and not as a power, should be effectuated. It is in substance a trust or direction for the accumulation of so much of the sub-shares of the infant grandchildren as shall not be needed for their support during their minority. It is separable from the other trusts and dispositions, and no important practical change is effected by vesting the property absolutely in the infants during their minority. The failure of this particular trust or direction should not therefore invalidate the residue of the will. (*De Kay* v. *Irving*, 9 Paige, 527, 528, 529; affirmed, 5 Den., 646; *Darling* v. *Rogers*, 22 Wend., 438; *Van Vechten* ·v. *Van Vechten*, 8 Paige, 103; *Kane* v *Gott*, 24 Wend., 666; *Savage* v. *Burnham*, 17 N. Y., 576; *Oxley* v. *Lane*, 35 N. Y., 349; *Harrison* v. *Harrison*, 36 N. Y., 543; *Schettler* v. *Smith*, 41 N. Y., 328.)

The trust to accumulate a portion of the surplus income during the life of the widow, is conceded to be void.

But its invalidity does not so far affect the general scheme and intent of the testator as to require that the whole disposition of the residuary estate be declared void. This provision for accumulation appears upon its face to have been inserted to meet a contingency which might or might not occur, and to dispose of a surplus, the existence of which was wholly uncertain. If the dispositions of the property which the testator calculated would pass under his will can be sustained, his intentions in respect to that property should not be frustrated, because he has failed to make a valid disposition of a surplus which he presumed might possibly arise.

The income thus directed to be accumulated during the life of the widow must be disposed of as directed by 1 R. S., 726,

§ 40.    That is to say, it belongs to the persons presumptively entitled to the next eventual estate.    The intent of the statute, and not of the testator, must govern the disposition of this undisposed of fund.    Who are the persons presumptively entitled to the next eventual estate which is to follow the trust estate for the life of the widow?

As to the testator's sons, there is no difficulty in determining that they are presumptively entitled to the next eventual estate in six-twelfths; but as to the other six-twelfths there is more difficulty.

The statute does not say the ultimate, but the next eventual estate.    That is, the estate which is to take effect upon the happening of the event which terminates the accumulation.    Those who presumptively will be entitled to receive the rents and profits when the period of accumulation ends, are entitled to anticipate the event which is to terminate the accumulation and to take at once the rents and profits which are undisposed of or unlawfully directed to be accumulated.

If upon the death of the widow a life estate had been given to the daughters, they would, under this section, be entitled to all rents accruing during the widow's life and not disposed of or lawfully directed to be accumulated.    As to those rents, the benefits of their life estate would be anticipated and take effect before the time appointed by the will.    But by reason of the trusts for the daughters, the daughters take no estate. Their trustees, however, take the estate for them.    There are successive trust estates : first, of the whole property during the widow's life, and, secondly, of two-twelfths for each daughter during her life.    On the termination of the trust estate created for the life of the widow, we think that a new trust estate arises in two-twelfths for the life of each daughter, and that that is the next eventual estate within the meaning of the statute; that in legal effect the trust estate for each daughter is as distinct from the trust estate during the widow's life as if on the termination of the latter estate new trustees had been appointed to take the shares for the daughters; and that as no accumulation is directed during the lives of the

daughters, but the whole income is to be applied to their use, the spirit and intent of the statute is complied with by declaring the trustees for each daughter entitled from the testator's death to two-twelfths of the net income not lawfully disposed of during the widow's life, including all arrearages and accumulations of income heretofore received by the executors; such income and accumulations heretofore accrued and received to be paid over to the daughters respectively who are living, and the income which is to accrue to be applied to their use semi-annually, or as the same may be received; the share of the daughter who is deceased to be paid to her issue.

Except as to this direction for accumulation, the trust for the life of the widow must be declared valid. It causes no undue suspension of the power of alienation or of absolute ownership. Although the beneficiaries are more than two, yet the trust is limited in its duration to the life of the widow, and as to each beneficiary the beneficial interest is for his life or a shorter term; similar trusts have repeatedly been sustained. (*Gilman* v. *Reddington*, 24 N. Y., 19; *Harrison* v. *Harrison*, 36 N. Y., 543; *Savage* v. *Burnham*, 17 N. Y., 569.)

There is no direction in the will that, in case of the death of a son or daughter during the widow's life, that portion of the income which is directed to be paid to the sons and the daughters during the life of the widow shall be paid to their issue. Such a direction was held valid in the case of *Gilman* v. *Reddington* (24 N. Y., 19); but not being contained in this will, it cannot be implied; nor can we hold that any greater interest than one for life, in the income, can be given to any beneficiary under a trust of this description. We must, therefore, hold that on the death of a son or a daughter during the widow's life, that portion of the income to which the son or the daughter so dying would have been entitled if living, becomes undisposed of up to the time of the death of the widow, and belongs, by virtue of section 40, to the presumptive owners of the next eventual estate; and our conclusion is, that such income is to be regarded as a portion of the income of the share of the son or daughter so

dying, and will belong to the parties presumptively entitled to the next eventual estate in that share.

Under this rule, the $1,500 per annum and the share of surplus income which would have been payable to Mrs. Lockwood during the life of the widow, belong to her children from the time of her death.

The subject of requiring Mr. Lockwood to give security for the funds which he may receive as administrator of his wife has been considered by us, and we have come to the conclusion as to any sums which he may receive as such administrator, to the principal of which his children will be entitled at his death under the laws of Connecticut, the direction as to security contained in the judgment of the General Term should be retained. (See *Clark* v. *Clark*, 8 Paige, 152.)

We also think, that so much of the judgment as declares valid the bequest of $5,000 to Yale College should be affirmed. The direction to pay to the treasurer is a good gift to the college, the college having been shown to be capable of taking. (*Emery* v. *Hill*, 1 Russ., 112; *De Witt* v. *Chandler*, 11 Abb. Pr., 459; *Hornbeck* v. *Am. Bible Society*, 2 Sandf. Chy., 133, and cases cited.)

The college is a foreign corporation, and, according to the laws of this State, the testator had power to bequeath to such a corporation, it being authorized by the laws of its own State to take.

It is exceedingly doubtful whether the request to the trustees of the college to accumulate this fund, and after it has reached $30,000, to apply so much of it as will continuously educate one lineal descendant of the testator bearing his paternal name, is sufficient to raise a trust. The testator does not use imperative words, as in other clauses of the will, but mere precatory words. Such words, when addressed to a party having an interest in the fund, are of much less force than when addressed to one holding merely in a trust capacity, and they will not be held to raise a trust when either the subject affected, or the object to be benefited is uncertain.

In this bequest the amount to be applied to the benefit of

the testator's descendant is not defined; the event upon which the request is to take effect is uncertain. It is not stated whether the beneficiary must bear the testator's paternal name as a surname; should there be several claimants answering the description, there is no means of determining between them. The period at which the request is to take effect is exceedingly remote, and depends on the contingencies of the fund reaching the amount named, of the existence after that time of such a descendant as is described, and of his or his guardian's desiring that he be educated at the college.

If the request as to the education of the testator's descendant does not constitute a trust, the consequence is that there is a simple request to the legatee to accumulate for its own benefit, no other person being interested in the fund. Such a request cannot be construed as raising a trust. A bequest of a sum of money to A, with a request that he will save and accumulate it for himself, raises no trust. When the words of request are not operative as a trust, the legatee takes unconditionally. (*Gilbert* v. *Chapin*, 19 Conn., 342; *Harper* v. *Phelps*, 21 Conn., 257, and cases there cited; *Hood* v. *Oglander*, 34 L. J., Ch., 528; *Shaw* v. *Lawless*, 5 Clark and Finnelly, 129; *Sale* v. *Moore*, 1 Sim. R., 534; *Pennock's Estate*, 20 Penn., 268; 48 id., 466; *Mayor, etc., of Gloucester* v. *Wood*, 3 Hare, 142.)

These are questions, however, which must necessarily be determined by the courts of the State in which the corporation legatee is situated. The fund is to go there, and be there administered. The will of the testator, so far as the courts of this State can act upon it, is fully executed, when the money is paid to the proper officer of the foreign corporation; and there is no law of this State prohibiting gifts to such foreign corporation. Though the laws of the State of that corporation may permit it to hold and administer property in perpetuity, or to accumulate it, the local policy of this State upon that subject is not interfered with, by allowing property of our citizens to pass to such foreign corpora-

tion, and be administered by it in such foreign State according to its own laws. (*Fordyce* v. *Bridges*, 10 Beavan, 105; S. C., 2 Phillips, 497; *Vansant* v. *Roberts*, 3 Maryl., 119; *Chamberlain* v. *Chamberlain, post* 424

A judgment should be settled on notice in conformity with this opinion.

Concurred in by all the judges, except CHURCH, Ch. J. who dissents from so much of the opinion as holds the bequest to Yale College valid.